369 A.2d 271

**COMMONWEALTH of Pennsylvania**

**v.**

**Roger HAYNES, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 30, 1975.

Decided Nov. 22, 1976.

Arthur L. Gutkin, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken to our Court from judgment of sentence rendered after a jury trial and adjudication of guilt to indictments charging criminal conspiracy, kidnapping, aggravated assault, and possession of instruments of crime.[1] Post-trial motions were filed and denied, thus preserving questions raised for our review.

A short factual history of the case, the evidence being considered in a manner most favorable to the verdict winner, is as follows: On the night of June 28, 1973, Clifford Walker was visiting a house occupied by Dianna Frank, her two children and one Roxanne Willock. He had been going there to buy drugs. Police suddenly appeared in front of this house. Walker and Roxanne ran

---

1. Violations of the "Crimes Code", Act of 1972, December 6, P.L. 1482, No. 334, 18 Pa.C.S. §§ 903, 2901, 2702, 907 respectively.

out of the back door, climbed over a fence and went together to Walker's apartment two blocks away. They stayed in his apartment until the early hours of the morning of June 29, 1973, during which period of time they engaged in sexual relations. Walker escorted Roxanne home that morning and went to work. Around 5:00 p. m., that afternoon Walker returned to Dianna Frank's house to visit. He made his way into the kitchen. Roxanne locked the doors. Suddenly appellant, identifying himself as Roxanne's boyfriend, entered the kitchen and confronted Walker with the accusation that Walker had raped Roxanne. She confirmed the accusation. Walker admitted he had had an intimate affair with Roxanne but denied raping her. Nevertheless appellant began to mete out a night of horror. Appellant drew a knife on Walker, tied him about the legs and neck, and began to threaten death and castration. Boiling water was poured on Walker's naked body, then salt and pepper was shaken thereupon. Two neighbors were called over for the "party", as it was described. This torture continued, interspersed with kicking all parts of Walker's body, repeated threats of death with knives and guns, and the jamming of a broomstick into Walker's rectum. Appellant and his cohorts placed Walker in a van and drove about for some hours, ending the trip on a bridge over Crum Creek in Swarthmore, Delaware County. Thereupon Walker was thrown into the water, and in the water he was sufficiently alert to duck under the surface until he believed his captors had driven away. He reached shore and received help at a near-by apartment complex. Walker was hospitalized for approximately two months.

■ Appellant's first allegation of error is that the lower court should have granted his request for dismissal pursuant to Pa.R.Crim.P. 1100. A hearing was held on this motion on October 29, 1974. A criminal complaint had been filed on July 2, 1973. Testimony from the

hearing shows that appellant had fled and Philadelphia authorities sought appellant through the means of the F. B.I., and a fugitive flight warrant. Appellant was apprehended in Virginia on August 2, 1973, and returned to Delaware County and there lodged in jail on August 3, 1973. It thus is clear that appellant was unavailable for 31 days and nothing could proceed on the case in question during that time. The case of *Commonwealth v. Lewis*, 237 Pa.Super. 357, 352 A.2d 99 (1975), relied upon by appellant, is factually inapposite because therein the unavailability of the defendant did not affect the case there pending. The case clearly mandates that "it is only those absences of the defendant or his attorney which caused a delay in the proceedings of the *case in question* which can be excluded pursuant to Rule 1100(d)." [Emphasis theirs.] *Lewis, ibid.*, 237 Pa.Super. at 360, 352 A.2d at 101. Such a period was properly found excludable. Instantly the 31 days from July 2, 1973 to August 3, 1973 are excluded from the 270 day period.

Testimony of the Philadelphia Detective in charge of the case shows that from August 3, 1973, to October 9, 1973, numerous phone calls to the Delaware County authorities satisfied him that appellant was seriously ill and hospitalized. During this period appellant had a kidney removed. This is a valid reason for one's unavailability and is properly excludable under Rule 1100(d). Sixty-seven more days are excluded because of appellant's unavailability. Thus a total of 98 days are excluded, and the operative date for the commencement of trial, under Rule 1100, is extended by that number of days, placing the date for required trial at July 5, 1974, well beyond the originally-applicable date of March 29, 1974, which is 270 days after the filing of the complaint. It is important to note that at the hearing on appellant's motion to dismiss, all parties agreed that the Commonwealth only had to prove an excludable period up to June

8, 1974, when appellant escaped from prison and again fled jurisdiction. The additional 98 days places the time available for commencement of trial well beyond June 8, 1974. Judge GREENBERG, following the hearing and based upon this 98-day exclusion as well as the additional period due to appellant's escape and subsequent return on September 10, 1974, denied relief and found that the last day for the beginning of trial was February 25, 1975. In view of the clear evidence proving the unavailability of appellant and the consequent automatic exclusion under Rule 1100(d) of 98 days, and the parties' agreement that no further time need be considered if the Commonwealth proved excluded time sufficient to bring the required hearing date up to June 8, 1974, there would be no error. Trial commenced on February 3, 1975, well within the properly-extended period.

[2, 3] Appellant complains of the opening statement of the attorney for the Commonwealth. The prosecutor, in describing the crime alleged, made the following comments:

. . . . . . .

They [the appellant and his cohorts] took his [Walker's] penis . . . and put it on the table and banged it with a bowling pin and then he took lighter fluid and set it on fire and put it out, he took boiling water and poured the boiling water on it.

. . . . . . . .

They inserted an instrument into his anus and poured boiling water there.

These comments are attacked as a source of prejudice to the appellant's case before the jury because they were not proved. Appellant first raised the issue by a request for a mistrial after the Commonwealth rested. The Commonwealth in its statement of what it intends to prove may not go so far from the facts as it knows them, and can reasonably infer from them, so as to inflame the

passions or sensibilities of the jurors against the defendant. *Commonwealth v. Fairbanks,* 453 Pa. 90, 306 A.2d 866 (1973). While it is evident that Walker reluctantly described what had happened to him, wanted to exercise restraint in this embarrassing situation, and the testimony had to be drawn from him by repeated questions, the testimony is clear that Walker denied the described abuses to his penis, and stated only that a broomstick had been inserted into his anus. We must conclude that the more descriptive offerings of the assistant district attorney were error. There is no way to conclude that they were able to be inferred from the testimony as presented. Of course it is difficult to outline a case before testimony is presented, but there is no indication in the instant record that the prosecutor was faced with a reluctant or intentionally silent witness. Our inquiry must go to whether these statements so aroused the feelings of the jurors, to the prejudice of appellant, as to constitute reversible error. *Commonwealth v. Ross,* 452 Pa. 500, 307 A.2d 898 (1973). We hold that they do not. Standing alone the unproven acts are inflammatory, but they must be considered in the atmosphere of a case where crimes actually proven are horribly gruesome. In the midst of descriptions of the most heinous and reprehensible treatment, the comments of the assistant district attorney if not entirely ignored by the jury would fade into insignificance and would not serve to inflame further the mind of a juror, beyond whatever state of mind the proven facts placed the juror. The error here is harmless beyond a reasonable doubt and does not require reversal.

 Another issue claimed to be prejudicial to appellant during trial is the lower court's allowance of the use of pictures of Walker's (the victim's) body. Appellant challenges this exercise of judicial discretion, arguing that the pictures were unduly inflammatory. Where the crime is so heinous as here, pictures thereof are naturally going to have a gruesome appearance. "Where pic-

tures are gruesome and so may be thought to have an inflammatory effect on the jury, the test to be used by the trial court in judging the admissibility is 'whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds of the jurors.' " *Ross, supra,* 452 Pa. at 506, 307 A.2d at 901, quoting *Commonwealth v. Wilson,* 431 Pa. 21, 31, 244 A.2d 734 (1968). Absent any valid claim that the pictures were distorted or that they depicted something other than this crime, we are of the view that they were important evidence in the proof of the Commonwealth's case. Where verbal accounts are made which are quite unbelievable in themselves, it is reasonable to expect the proponent to show graphic depictions (if they are available) of the event, as in this case to show burns upon the body and large areas devoid of skin. The degree of inflammatoriness of photographs allowed in *Ross, supra,* necessarily becomes greater when the oral descriptions themselves portray appalling conditions. We hold that the use of the pictures did not exceed the bonds of fair play to appellant. The trial court kept tight rein on the use of the photographs only as supportive of medical testimony. The photos were not shown to the jury outside the strictures of such testimonial evidence. There was no error here. See also *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974).

██ Appellant challenges comments of the prosecutor during his closing to the jury. First is the comment that an eyewitness and alleged co-conspirator of appellant was brought from a State Correctional Institution to testify for the Commonwealth. It is totally within the scope of good trial practice for the Commonwealth to point out that (as the evidence showed) the witness had been convicted as a participant in the crimes in question and his appearance subpoenaed so as to blunt the sword of defense counsel, who had attempted to impeach credi-

bility by inferring a "deal" for such testimony. Second the appellant complains of the remarks of the assistant district attorney's portrayal of appellant as one who "reaped terror" and caused "the evil [situation which] led that little girl [the alleged rape victim] to lie . . .," we hold that these comments are not the type which are so prejudicial that they go to the very heart of defendant's case or his testimony. Here the comments are descriptive of what the assistant district attorney justifiably thought the facts demonstrated, they would not form in the minds of the jurors "fixed bias and hostility toward the defendant" so that they would be unable to weigh the evidence and render a true verdict. *Commonwealth v. Wiggins,* 239 Pa.Super. 256, 361 A.2d 750, 753 (1976), quoting from *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975) and *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968).

██ There is no merit to appellant's argument that the charge to the jury was erroneous as to "conspiracy" because it permitted a finding of the crime from mere presence alone. The challenged portion reads:

Now, the defendant is also charged with conspiracy, which you will have to consider. This conspiracy is with Easter and Armstrong. And a conspiracy, simply stated, is when two or more people aid or take part in the commission of a crime, or if they plan a crime, or if they attempt or solicit a crime. In this case, it would have to be shown that Roger Haynes intended to commit a crime and that any one of his co-conspirators, Easter or Armstrong, committed some overt act. And the crime here, of course, is aggravated assault. This is if you find beyond a reasonable doubt that this defendant intended to commit the crime of aggravated assault and one or more of the others did some act to aid him or take part in the commission, then you should find him guilty of conspiracy.

There is nothing to support appellant's suggestion that this charge improperly would allow a finding of conspiracy from presence at the scene of the crimes alone. See *Commonwealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1972). In answer to a question posed by the jury during its deliberation, the judge further amplified the definition:

> THE COURT: Well, the Commonwealth says in the indictment that the conspirators were Easter, whom you heard, and Armstrong, and that the conspiracy—
>
> MR. BATEMAN: May it please the Court, of the defendant, Roger Haynes.
>
> THE COURT: Yes.
>
> And among the three of them, this conspiracy occurred.
>
> Now, conspiracy is an agreement. Generally, nobody is able to eavesdrop when an agreement is entered into; so you determine whether or not there was an agreement to do a criminal act by their conduct. You observe their conduct; and from this, you may or may not infer that they agreed to do this.
>
> The crime here, of course, was aggravated assault. The conspiracy, very simply, is when two or more—in this case the Commonwealth alleges three people—aided or took part in the commission of a crime. Here it would be aggravated assault. There must be an overt act, one overt act.
>
> That is, for example, suppose three people got together and they said, "Let's rob a bank." They said, "Fine, we will rob a bank." But they do absolutely nothing else. This is not a conspiracy. There must be *something* done in furtherance, one act in furtherance of this conspiracy: getting in the car, going to the bank, securing a gun.

Lastly the appellant complains that the trial judge in his charge instructed the jury to disregard defense counsel's

closing arguments. The judge was careful to point out that this was not a case where rape was charged. The portion of the charge complained of is as follows:

. . . But even if it were a forceful rape or if she agreed to have sexual intercourse with Walker, it makes no difference, because, although this may be the reason for the alleged behavior of the defendant certainly it is not a legal excuse for the alleged behavior of the defendant.

A part of appellant's argument was that the question of rape of Roxanne was important to the issue of credibility of Walker since he denied raping her. The judge took no issue with this argument. His actual charge with respect to arguments of counsel was as follows:

You should not infer from what I have said that you are to ignore what the District Attorney and counsel have said to you in their addresses. It is not only your right, but it is your duty to consider their arguments and to view and examine the evidence in the light of the arguments of the District Attorney and counsel for the defendant.

Judgment of sentence affirmed.