375 A.2d 781

**COMMONWEALTH of Pennsylvania**

**v.**

**Russell M. METZGER, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 1977.

Decided June 29, 1977.

---

108

James F. Heinly, Lancaster, with him Morgan, Hallgren & Heinly, Lancaster, for appellant.

D. Richard Eckman, District Attorney, Lancaster, with him Henry S. Kenderdine, Jr., Assistant District Attorney, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

The instant appeal presents only one issue: whether the lower court erred when it extended the period in which the Commonwealth was required to try the appellant. See Rule

1100(c), Pa.R.Crim.P., 19 P.S. Appendix. We believe that the Commonwealth exercised due diligence and, therefore, we affirm the judgment of sentence.

On July 10, 1975, the Lancaster County District Attorney filed a complaint charging appellant with delivery of a controlled substance.[1] Therefore, it had to try appellant no later than January 6, 1976. See Rule 1100(a)(2). On December 17, 1975, one hundred and sixty days after the complaint was issued, the Commonwealth filed a petition requesting an extension of time in which to try appellant. See Rule 1100(c). The court held a hearing on the Commonwealth's petition on January 22, 1976,[2] and, after the Commonwealth presented extensive testimony, it granted an extension for sixty days. At that point, appellant made an oral motion to dismiss the charges. Rule 1100(f). The court denied that motion. Trial commenced immediately after the hearing. On the following day, a jury found appellant guilty of delivery of a controlled substance. After the denial of post-verdict motions, the lower court sentenced appellant to a term of imprisonment of 6 to 12 months. This appeal followed.

The facts relating to appellant's Rule 1100 claim were developed at the January 22, 1976 hearing. After the complaint was filed, there were only two criminal terms of court

1. Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended; 35 P.S. § 780–113(a)(30).

2. We note that the Commonwealth filed its petition within the period, but that the court did not hold a hearing on it until after the period had run. We again must disapprove this practice. As we noted recently in *Commonwealth v. Mancuso*, 247 Pa.Super. 245, 250, n. 3, 372 A.2d 444, 446, n. 3 (1977): "The risk is obvious: if the court denied the extension after the period has run, the Commonwealth is prevented from bringing the accused to trial. If the petition is denied promptly, the Commonwealth may nonetheless be able to try the accused within the period. Because we conclude that the extension was properly granted and because the court's inaction engendered no additional delay, . . . , we do not need to address the issue further." See also, *Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1976). We can also imagine situations in which prejudice to the defendant would result from such a practice.

in which appellant could have been tried within the 180 day period—the September and November, 1975 sessions. Each term lasted for two weeks. During the September term, appellant's brother was tried on a separate charge. At that trial, the Commonwealth presented considerable testimony which implicated appellant in various drug deals. The Commonwealth, therefore, chose not to bring him to trial in September because the county had only one jury pool, members of which had already heard testimony against him at his brothers trial. During the November trial term, the Commonwealth tried appellant on a charge of conspiracy, arising out of one investigation, but based on a different criminal episode from the offense involved herein.[3] Thus, the Commonwealth faced the same problem as it did during the September term. In its opinion, the court explained that had the cases against appellant been consolidated, it would have severed the charges on a motion by appellant or by appellant's co-conspirator in the case tried in November. The court concluded that the foregoing amounted to due diligence by the Commonwealth.

The delay in the instant case was caused in part by Lancaster County's insufficient allocation of resources to the administration of its criminal docket. Had the county provided additional criminal trial terms between July and January or had the county empaneled more than one jury pool, there would have been no need to defer appellant's trial until January, 1976. Allocations of inadequate resources, however, does not necessarily lead to discharge under Rule 1100(f). That view, once held by a majority of this Court, was rejected by the Supreme Court in *Commonwealth v. Mayfield*, 469 Pa. 214, 220, 364 A.2d 1345, 1348 (1976): "The Superior Court, concluding that rule 1100 was intended to promote prompt action by the courts as well as by the prosecution, held that delays attributable to court administration could never justify an extension under rule 1100(c). The rule, however, was not intended to create such an

---

3. Cf. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 110.

inflexible result. This Court is aware that, despite diligent efforts by the trial courts, cases may arise when a trial of a defendant cannot be held within the prescribed period." Cf. *Commonwealth v. Coleman*, 241 Pa.Super. 450, 361 A.2d 870 (1976), allocatur granted December 12, 1976. Therefore, we must examine the record to determine whether the Commonwealth exercised due diligence because inadequate resources does not presumptively prove a lack of due diligence.

▪ Initially, we note that the Commonwealth's Rule 1100(c) petition was timely filed. See *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976); *Commonwealth v. Woods*, 461 Pa. 255, 336 A.2d 273 (1975). We must next decide whether the prosecution exercised "due diligence" and whether delays due to the court's inability to try the appellant could not be avoided. *Commonwealth v. Mayfield*, supra, 469 Pa. at 222, 364 A.2d at 1350. Appellant contends that we are precluded from holding that the Commonwealth has exercised due diligence because "[t]here is nothing in the record in this case to show that more than one trial could not have been held in a term of court, particularly in light of the extensive voir dire available to the defense and prosecution. Moreover the decision to attach and try only one case was also a unilateral decision by the Commonwealth and not due to an application for severance by Appellant's counsel."

▪ Despite the numerous cases decided under Rule 1100, we have not evolved a clear definition of due diligence. See, e. g. *Commonwealth v. Mancuso*, 247 Pa.Super. 266, 372 A.2d 454 (1977); *Commonwealth v. Mancuso*, 247 Pa.Super. 245, 372 A.2d 444 (1977); *Commonwealth v. Martin*, 246 Pa.Super. 407, 371 A.2d 903 (1977); *Commonwealth v. Lewis*, 247 Pa.Super. 46, 371 A.2d 1318 (1977); *Commonwealth v. Brown*, 242 Pa.Super. 397, 364 A.2d 330 (1976); *Commonwealth v. Hagans*, 242 Pa.Super. 393, 364 A.2d 328 (1976); *Commonwealth v. Mayfield*, 239 Pa.Super. 279, 362 A.2d 994 (1976), rev'd 469 Pa. 214, 364 A.2d 1345 (1976);

*Commonwealth v. Shelton,* 239 Pa.Super. 195, 361 A.2d 873 (1976), aff'd 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Cutillo,* 235 Pa.Super. 131, 339 A.2d 123 (1975).[4]

However, while not on all fours with the instant case, *Commonwealth v. Lewis,* supra, is instructive. In *Lewis,* the lower court granted the Commonwealth's Rule 1100(c) petition despite the fact that delay was caused in part by the limited number of grand juries empaneled by Cumberland County. Further, extensive delay resulted after the Commonwealth agreed to a postponement of the proceedings so that authorities could administer a polygraph test. We affirmed and stated:

"The issue thus becomes whether the Commonwealth in agreeing to the request of the appellant for the administration of the polygraph test and failing to bring the appellant to trial prior to the next Cumberland County trial term, exercised due diligence entitling it to the extension. The prosecuting authorities made every possible effort to accommodate appellant's strategy of attempting to obtain a dismissal of the charges if the polygraph test results were favorable. Such a course of conduct can only be characterized as a fair and just approach to the administration of criminal justice in our Commonwealth. We refuse to hold that, under the facts of this case, the prosecuting authorities should have resisted the appellant's request for the test or should have pushed appellant's case through a preliminary hearing on April 23, 1975, or April 24, 1975, in order to meet

4. From a review of the foregoing cases, we conclude that inadequate record keeping or failure to keep track of a defendant who is otherwise available precludes a finding of due diligence. See, e. g., *Commonwealth v. Martin,* supra; *Commonwealth v. Cutillo,* supra. At the same time, while delay caused by protracted pretrial litigation may not be excluded by operation of Rule 1100(d), see *Commonwealth v. Shelton,* supra; *Commonwealth v. Millhouse,* 239 Pa.Super. 445, 362 A.2d 398 (1976), rev'd on other grounds 470 Pa. 512, 368 A.2d 1273 (1976), the Commonwealth may advance such time for purposes of an extension. *Commonwealth v. Mancuso,* supra, 247 Pa.Super. 266, 372 A.2d 454. Further, the Commonwealth may seek an extension if pretrial delay is caused by actions beyond the control of the court system, the defendant, and the prosecutor. See *Commonwealth v. Brown,* supra; *Commonwealth v. Cutillo,* supra.

the deadline of the then sitting grand jury. Due diligence does not require the Commonwealth to resist a reasonable request for delay or to force a defendant to go to a hearing on one day's notice." 247 Pa.Super. at 51, 371 A.2d at 1321. We also noted that " . . . the delay occasioned by the fact that the next grand jury did not meet until August, 1975 [does not], preclude a finding of due diligence on the part of the prosecutorial officers. The district attorney could not have required that intervening court sessions be held in order to accommodate the appellant's case. He did all that he could do when he petitioned for an extension of the Rule 1100 period 37 days before it was to expire. We are thus faced with a situation where despite due diligence by the district attorney trial could not have been held within the statutory period because of judicial delay in the trial scheduling in Cumberland County." 247 Pa.Super. at 52, 371 A.2d at 1321. Further, although the failure to schedule the grand jury more frequently amounted to judicial delay, the extension was proper because " . . . where 'judicial delay' prevents trial within the prescribed period despite due diligence by the Commonwealth, *Shelton* and *Mayfield* only require a showing of the reasons why the case could not, *consistent with the court's business*, be tried within the appropriate period. Nothing in *Mayfield* and *Shelton* can, upon a fair reading of those cases, reasonably be construed as automatically requiring extra or continuous sessions of court in a case such as this where the failure to submit the case to a grand jury originated from a request for a continuance by defense counsel. The prosecuting authorities acted diligently while making every possible effort to accommodate appellant's strategy. This is all that Rule 1100 requires of them." 247 Pa.Super. at 53, 371 A.2d at 1322. (Emphasis in original).

▮▮▮▮ In the instant case, the prosecutor was faced with infrequent trial terms and only one jury pool during each term. Apparently, those limited resources are sufficient to meet the needs of the orderly administration of the county's

criminal docket.[5] We turn, therefore, to the question of whether the Commonwealth's "unilateral" decision to postpone appellant's trial precludes a finding of due diligence. We do not think that the district attorney was compelled to permit the defendant to choose between a speedy trial and a fair trial. The prosecutor and the court administrator are both responsible for management of the court calendar. *Commonwealth v. Mayfield,* supra; *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 1.2. (Approved Draft, 1968). The prosecutor must act to ensure that a defendant receive a fair trial; it is his obligation "to seek justice, not merely to convict." *Commonwealth v. Lewis,* supra 247 Pa.Super. at 51, 371 A.2d at 1321, citing ABA Code of Professional Responsibility EC7–13. The prosecutor's concern was well-founded. Had the Commonwealth proceeded to trial in September or November, the risk of creating reversible error was great because it was likely that jurors would have been made aware that appellant was involved in multiple prosecutions. For example, in *Commonwealth v. Trapp,* 217 Pa.Super. 384, 272 A.2d 512 (1970), and *Commonwealth v. McDaniel,* 217 Pa.Super. 20, 268 A.2d 237 (1970), jurors were aware of a trial list which indicated that the defendant was charged with other offenses unrelated to the case on trial. We found that the potential prejudice resulting from that knowledge warranted a new trial. Further, while in our adversary system we frequently allow or required defendants to make similar strategic decisions as that involved herein, see, e. g., Rule 313, Pa.R.Crim.P., the prosecutor faced an additional difficulty in this case. As noted by the lower court, attempting to join both charges against appellant in November, thereby placing the choice between delaying one case or allowing the jury to know of multiple

5. See *Commonwealth v. Lewis,* supra 247 Pa.Super. at 54, 371 A.2d at 1322: "In many of the smaller counties in our Commonwealth, such as Cumberland County, criminal sessions held four times a year are more than adequate to keep the court's business current. Additional court sessions should not be required unless there is a clear showing that the business of the court requires such a procedure."

charges, "might have been prejudicial to Defendant's co-conspirator, . . . , because he was not involved with either of the delivery charges against Defendant." Appellant's response that the problem could have been averted by extensive voir dire misses the mark. First, unless voir dire were conducted individually out of the presence of other veniremen, the inquiry aimed at segregating jurors with knowledge of the other charges would probably have alerted other jurors to the existence of a separate charge. Further, the Commonwealth was not obligated to use the time-consuming procedure of individual voir dire. See Rule 1106, Pa.R. Crim.P. 19 P.S. Appendix. Second, and more important, that the suggested alternative may have existed does not preclude a finding of due diligence. Here, the delay was relatively short; the interests of justice were met by the prosecutor's commendable caution; and the decision protected a co-conspirator's rights which might not have been adequately protected by the appellant. We cannot find that the prosecutor failed to exercise due diligence when the delay engendered was so obviously intended to foster the fair administration of justice.

Judgment of sentence is affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

In my dissenting opinion in *Commonwealth v. Lewis,* 247 Pa.Super. 46, 371 A.2d 1318 (1977), I expressed my opinion that the holding of *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976), should be applied to cases decided prior to the announcement of the decision. That is, when we are called upon to review the grant of an extension of time under Rule 1100(c) on account of judicial delay, we must apply the *Mayfield* standard that " . . . the record must also show the causes of the court delay and the reasons why the delay cannot be avoided." *Id.* 469 Pa. at 222, 364 A.2d at 1350. In my view if there is no such record showing then the record must be remanded.

In this case I would not remand since the lower court's opinion, while written without the benefit of the Court's opinion in *Mayfield*, shows a sufficient explanation for the delay and the reasons it could not be avoided.