461 A.2d 1237

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Earl LYLES.**

Superior Court of Pennsylvania.

Argued May 3, 1982.

Filed April 29, 1983.

Reargument Denied July 12, 1983.

Petition for Allowance of Appeal Denied.Nov. 1, 1983.

196

Joseph W. Carroll, III, Assistant District Attorney, West Chester, for Commonwealth, appellant.

Dennis D. Brogan, West Chester, for appellee.

Before SPAETH, ROWLEY and CIRILLO, JJ.

ROWLEY, Judge:

This is an appeal by the Commonwealth from an Order granting appellee's Motion in Arrest of Judgment on the ground that the Commonwealth had violated Pa.R.Crim.P. 1100.

On June 24, 1977, a criminal complaint was filed in Chester County against appellee charging him with robbery, criminal conspiracy, theft, receiving stolen property, recklessly endangering another, terroristic threats, and unlawful restraint. Appellee was arrested on June 28, 1977. A preliminary hearing was held on July 22, 1977, at which appellee was granted bail and given *written notice* of his arraignment scheduled for August 29, 1977.[1] Appellee

---

1. Appellee acknowledged receipt of this notice on July 22 by placing his signature on the same, the original of which is found in the record lodged with this Court on appeal. The notice signed by appellee was a form notice with the appropriate information typed in the alloted spaces. August 29, 1977, was typed in the space provided on the notice form for the date of formal arraignment. An examination of the entire record in the case reveals no change in or continuance of that August 29, 1977 formal arraignment date. The fact that the docket shows that an order issuing a bench warrant for appellee was signed on September 12, 1977, is conclusive of nothing except that an

failed to appear for arraignment and a bench warrant was subsequently issued on September 12, 1977. On November 2, 1977, appellee was hospitalized at St. Luke's Hospital in Philadelphia with serious injuries as a result of a "shoot-out" with the Philadelphia police. On December 8, 1977, the Commonwealth filed a Petition to Extend the time for trial. The petition was unopposed by appellee. On February 22, 1978, a ninety (90) day extension was granted to the Commonwealth. On May 3, 1978, appellee was transferred from St. Luke's Hospital to the Graterford Prison Medical Unit in Montgomery County. On May 17, 1978, the Commonwealth filed a second Petition to Extend the time for trial. On August 17, 1978, after an evidentiary hearing, the Commonwealth's second petition was granted and the time for trial was extended to August 28, 1978. This second extension is the subject of this appeal. Trial began on August 28, 1978. Appellee was convicted of two counts of robbery. Post-trial motions resulted in the granting of appellee's Motion in Arrest in Judgment by the court *en banc*. This appeal followed.

Four issues, as stated by the Commonwealth, are raised on appeal: 1) Whether appellee waived his right to raise the Rule 1100 issue?; 2) Whether the Commonwealth must establish that it exercised due diligence in attempting to execute a bench warrant in order to qualify for exclusion of time under Rule 1100?; 3) Whether the court *en banc* may make findings of fact contrary to that of the hearing court? and 4) Whether the Commonwealth has exercised due dili-

order issuing a bench warrant for appellee was signed on September 12, 1977. To infer that September 12, 1977, was the date of formal arraignment because the bench warrant was issued on that date is to engage in speculation. Although the Commonwealth at the hearing on its second petition for extension misstated the date of formal arraignment as September 12, 1977, the Commonwealth in its brief to this Court has corrected its error and now agrees that August 29, 1977, was the proper date. Finally, and dispositively, the trial court, as the finder of fact, determined that August 29, 1977, was the date set for appellee's formal arraignment and based its computation of time on that date. Because the record supports the trial court's finding in this respect, we, as an appellate court, are bound to that finding and are not free to disregard it. Therefore, the date of appellee's formal arraignment stands as August 29, 1977.

gence when it tries a defendant within the time period of Rule 1100 as extended?

■ The Commonwealth first argues that appellee waived the Rule 1100 issue by failing to file a Motion to Dismiss prior to trial. It is undisputed that appellee opposed the second Petition to Extend, consequently, the issue has been preserved for appellate review. *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978).

The Commonwealth's next three arguments deal with whether it exercised due diligence so as to justify the extension granted on August 17, 1978.

■ In reviewing an alleged Rule 1100 violation, all periods of delay beyond the prescribed period of 180 days must be either excluded from the computation or justified by an order granting an extension, pursuant to the terms of the rule, if the Commonwealth is to prevail. *Commonwealth v. Hoffman*, 255 Pa.Super. 66, 386 A.2d 138 (1978). The trial court found a total of 248 days to be excludable: they are the sixty-five (65) day period from August 29, 1977 until November 2, 1977 when appellee was a fugitive, and the 183 day period from November 2, 1977 until May 3, 1978 during which appellee was hospitalized.[2] The trial court concluded, however, that even excluding the 248 days, appellee was brought to trial after the Rule 1100 period had expired. The court calculated that 431 days had elapsed between June 24, 1977 and August 28, 1978. Therefore, subtracting the 248 days excludable time from the 431 days, the court concluded that appellee was brought to trial 183 days after the complaint was filed. Consequently, the court went on to determine whether the Commonwealth had exercised due diligence in attempting to bring appellee to trial so as to

**2.** The Commonwealth now argues that another time period, May 4, 1978, to May 14, 1978, should be excluded. The Assistant District Attorney testified that he discovered appellee had been released from the hospital by means of a newspaper article on May 14, which stated that appellee had appeared in Montgomery County court the day before. The Commonwealth did not discover for ten days that appellee had been released from the hospital because of its own lack of diligence. This period, therefore, is not excludable.

justify the extension of the date for commencement of trial to August 28, 1978. The trial court concluded that the Commonwealth had not exercised due diligence and granted appellee's Motion in Arrest of Judgment.

We agree with the trial court that the sixty-five (65) day period from August 29, 1977 until November 2, 1977 when appellee was a fugitive, and the 183 day period from November 2, 1977 until May 3, 1978, during which appellee was hospitalized, were properly excluded.[3] Nevertheless, because our calculation of the time which elapsed between the filing of the complaint and the date of trial differs from that of the trial court, we have found no Rule 1100 violation and, therefore, reverse and remand for further proceedings.

With respect to the two excludable periods of time, we note that Rule 1100(d), pertaining to "exclusions" for periods of delay attributable to the accused or his attorney, has been held to require proof of "due diligence in order for the Commonwealth to avail itself of [the] exclusion[s]." *Commonwealth v. Mitchell*, 472 Pa. 553, 561, 372 A.2d 826, 830 (1977). Under *Commonwealth v. Cohen*, 481 Pa. 349, 356, 392 A.2d 1327, 1331 (1978), however," a defendant on bail who fails to appear at a court proceeding, of which he has been properly notified, is *unavailable* from the time of that proceeding until he is subsequently apprehended or until he voluntarily surrenders himself." (Emphasis added).

---

**3.** We note, for reasons of clarity, that the sixty-five (65) day period when appellee was a fugitive is calculated as beginning on August 29, 1977, and ending on November 1, 1977. The 183 day period when appellee was hospitalized is calculated as beginning on November 2, 1977, and ending May 3, 1978. In mathematically computing the first period of excludable time, we count August 29, 1977, as the first day of that period because appellee was, under the facts, unavailable as of that date as a fugitive from justice. Likewise, November 2, 1977, is counted as the first day of the second period of excludable time because appellee was, as of that date, confined in the hospital with serious injuries. Whether a criminal defendant or his attorney is unavailable within the meaning of Rule 1100(d) is a factual determination. The duration of such "unavailability", if any, is also factual determination. Because such periods of time are factually determined and not statutorily prescribed, they do not, unlike the 180 day period specified in Rule 1100(a)(2), fall within the purview of 1 Pa.C.S.A. § 1908.

In such a situation, "the concept of due diligence ... is misplaced in a speedy trial analysis." *Id.*, 481 Pa.Superior at 355, 392 A.2d at 1331. Consequently, in the case at hand, the sixty-five (65) day period from August 29, 1977 until November 2, 1977 when appellee was a fugitive, was, under *Cohen,* properly excluded. A due diligence inquiry during that period of time would be "misplaced."

As for the 183 day period of appellee's hospitalization which extended from November 2, 1977 until May 3, 1978, such a period is excludable so long as the Commonwealth was "satisfied ... that [appellee] was seriously ill and hospitalized." *Commonwealth v. Haynes,* 245 Pa.Super. 17, 21, 369 A.2d 271, 273 (1976). The Commonwealth knew that appellee had been seriously injured on November 2, 1977, in an incident involving the police which had left him with some form of paralysis. Two attempts to list appellant's case in December of 1977 and January of 1978 were striken because appellee was still hospitalized. The Commonwealth explained its understanding of the magnitude of appellee's injuries and his resulting unavailability at the February 22, 1978, hearing on its first Petition to Extend. At that hearing the attorney for the Commonwealth stated:

MISS TROIANI: Your honor, Mr. Lyles is in the hospital and it seems that he will be there for a number of months. He was shot by Philadelphia police, and, therefore, we would ask for an extension possibly until this summer because it doesn't look like he is going to be available for quite awhile.

It is obvious from that statement that the information the Commonwealth had concerning the nature of appellee's injuries led it to believe that appellee would be unavailable for trial *while he was hospitalized.* That belief was left unchallenged by counsel for appellee. "Due diligence" being a relative concept which varies with the circumstances of each particular case, it is our conclusion that, under the circumstances of this case, the Commonwealth exercised due diligence so as to avail itself of the 183 day period of exclusion. We are satisfied that the record shows that the

202

Commonwealth took measures to ascertain that appellee, who was injured as a result of his own criminal conduct, "was seriously ill and hospitalized," *Haynes, supra,* and that the Commonwealth was justified in concluding that the extent and nature of appellee's injuries was such as to render him unavailable for trial during his period of hospitalization. Consequently, this 183 day period when added to the sixty-five day period noted above produced 248 days of excludable time.

Contrary to the calculations of the trial court, we have determined that 430 days elapsed between the filing of the complaint and date of trial, since the first day of the period is excluded from the computation.[4] 1 Pa.C.S.A. § 1908; Pa.R.Crim.P. 2; *Commonwealth v. Wade,* 475 Pa. 399, 380 A.2d 782 (1977). Thus, excluding a total of 248 days, the operative date for commencement of trial under Rule 1100 was extended by that number of days, placing the run date at August 26, 1978. However, August 26, 1978 was a Saturday. Under the Rules of Statutory Construction, Saturday, August 26 and Sunday, August 27 are excluded from our computation. 1 Pa.C.S.A. § 1908. Therefore, the run date in this case was actually August 28, 1978, the date of trial. Since by our calculations appellee was brought to trial in accordance with the provisions of

4. Thus, our calculation is as follows:

| | | | |
|---|---|---|---|
| 1977 | – | June | 6 days |
| | | July | 31 days |
| | | August | 31 days |
| | | Sept. | 30 days |
| | | Oct. | 31 days |
| | | Nov. | 30 days |
| | | Dec. | 31 days |
| 1978 | – | Jan. | 31 days |
| | | Feb. | 28 days |
| | | March | 31 days |
| | | April | 30 days |
| | | May | 31 days |
| | | June | 30 days |
| | | July | 31 days |
| | | August | 28 days |
| | | | 430 days |

Rule 1100, we hold that the trial court erred in concluding that Rule 1100 had been violated.[5]

In his Motion in Arrest of Judgment, appellee also questioned the sufficiency of the evidence. This issue was not addressed by the trial court, nor was it raised on appeal by the Commonwealth. On remand, the question of whether the evidence presented was sufficient to convict appellee must be disposed of by the trial court before sentencing.

Order reversed and case remanded for further proceedings.

Jurisdiction is relinquished.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I am unable to subscribe to the majority's opinion for two reasons. First, the majority's arithmetic is in error. It is contradicted by the record, which shows that the trial did not occur on the 180th day but on the 197th day. But even on the majority's view of the record, the trial was held too late. Second, the majority finds that anyway, the Commonwealth exercised due diligence. For my part, I agree with the lower court's finding, which is more than amply supported by the record, that the Commonwealth did not exercise due diligence.

The Commonwealth filed its criminal complaint against appellee on June 24, 1977. In the ordinary course, Rule 1100 required the Commonwealth to bring appellee to trial by December 21, 1977, unless it applied for, and showed that it was entitled to, an extension under Rule 1100(c).

5. Rule 1100 does not necessarily require that a criminal defendant be tried within 180 calendar days from the date on which the complaint was filed in order for trial to commence in a timely fashion. The running of the 180 day interval can either be *suspended* by period of delay justifiably excluded under Rule 1100(d), or *extended* by period of delay adequately explained under Rule 1100(c). In this case, the running of the 180 day period was suspended during appellee's two periods of unavailability.

On September 12, 1977,[1] appellee failed to appear for arraignment and a bench warrant was issued for his arrest. On November 2 appellee was hospitalized as a result of serious injuries that he sustained in an incident involving the police. He remained hospitalized until May 3, 1978, when he was released and placed in the medical center of Graterford Prison.

Meanwhile, on December 8, 1977, the Commonwealth filed a petition for an extension of the Rule 1100 period. On February 22, 1978, a hearing was held on the Commonwealth's petition. The Commonwealth requested a 90-day extension. Appellee's counsel did not oppose the request, and the lower court extended the time by which the Commonwealth had to bring appellee to trial to May 22, 1978.

On May 17, 1978, the Commonwealth filed a second petition for an extension. On August 16 a hearing was held on the petition, and on August 17, over appellee's objection, the lower court extended the time for trial to August 28.

Appellee was tried on August 28, and was convicted. He renewed his objection to the second extension in a motion in arrest of judgment, and on April 3, 1980, the lower court granted the motion. On April 15 the court dismissed the charges against appellee and ordered him discharged. It is from that order that the Commonwealth has appealed.

### 1

#### a

The majority finds that the date appellee failed to appear for arraignment was August 29, 1977. At 1239. This finding is contradicted by the record, which shows that the date that appellee failed to appear was September 12.

No docket entry identifies August 29 as the date for appellee's arraignment. Indeed, there are no docket entries for August 29, 1977. For September 12, 1977, there is the following entry: "Bench warrant issued—Fail to appear for

---

1. The majority declines to accept this fact. The record showing that it nevertheless is fact is discussed *infra*.

arraignment—..." The Commonwealth's first petition for an extension, dated December 8, 1977, states that on September 2 the Commonwealth requested that the case be listed for trial during the October term. It is unlikely that if appellee had been missing on August 29, the Commonwealth would have made such a request on September 2. Finally, at the hearing on the second petition for an extension the assistant district attorney stated to the court that "defendant [appellee] failed to appear for formal arraignment on September 12, 1977, and your Honor issued a Bench Warrant for his failure to appear on that date." N.T. 8/16/78, 7.

I recognize that the lower court says that the arraignment was on August 29. However, while we must defer to findings of fact by the lower court, that is so only if the findings are supported by the record. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). Here the record does not support but contradicts the lower court's finding.

The majority relies heavily on the fact that on July 22, 1977, appellee acknowledged receipt of a notice stating that arraignment would be on August 29, but that shows only when the arraignment was *scheduled,* not when it was *held.* The majority says that the assistant district attorney "misstated" the date of the arraignment, when he told the lower court that it was held on September 12, but that the Commonwealth has now "corrected its error" in its brief. At 197–98 n.1. It is a novel proposition, for which the majority doesn't, and couldn't, cite any authority, that a party may by a statement in a brief "correct" a statement made of record. We should abide by the record and ignore the contrary statement in the Commonwealth's brief. A brief is not part of the record. Pa.R.A.P. 1921; *Mansfield v. Lopez*, 288 Pa.Super. 567, 432 A.2d 1016 (1981); *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385

(1981); *Gee v. Eberle,* 279 Pa.Super. 101, 420 A.2d 1050 (1980).

Had the majority abided by the record, it would have been obliged to find that the trial was held too late. The 180-day period started to run from the filing of the complaint. *Commonwealth v. Mitchell, supra.* It stopped running when appellee failed to appear for his arraignment. *Commonwealth v. Morgan,* 484 Pa. 117, 398 A.2d 972 (1979). By stopping the running of the period on August 29, the majority gains time for the Commonwealth. If the running of the period is not stopped until September 12, it will be found by reference to the calendar that the trial was not held until the 197th day.

b

Even if the majority were entitled to find that appellee failed to appear for his arraignment on August 29, still, the trial was held too late.

The majority says:

We agree with the trial court that the sixty-five (65) day period from August 29, 1977 until November 2, 1977 when appellee was a fugitive, and the 183 day period from November 2, 1977 until May 3, 1978, during which appellee was hospitalized, was properly excluded.

At 200.

The majority then concludes:

Consequently, this 183 day period when added to the sixty-five day period noted above produces 248 days of excludable time.

At 202.

Excluding 248 days, the majority finds that the run date was August 26, 1978, but, that being a Saturday, the Commonwealth had until August 28 to try the appellant. At 202.

The difficulty with this reasoning is that the period from November 2, 1977, to May 3, 1978, is not 183 days but 182.

Thus, the excludable time was not 248 days but 247, so that appellee was tried not on the 180th day but the 181st (or rather, since a weekend intervened, on the 183rd).[2]

2. The majority states that it has counted August 29 (the day, according to the majority, that appellee failed to appear for arraignment) as the first day that appellee was unavailable. In similar cases, however, the day that the defendant first became unavailable has not been counted. *See, e.g., Commonwealth v. Cohen,* 481 Pa. 349, 392 A.2d 1327 (1978) (defendants unavailable for 20 days—from June 26, 1975, when they failed to appear for arraignment, until July 16, 1975, when they appeared in court); *Commonwealth v. Bell,* 283 Pa.Super. 196, 423 A.2d 1056 (1980) (defendant unavailable for 36 days—from December 14, 1976, when he failed to appear for trial, until January 19, 1977, the day he surrendered).

In excluding the day that the defendant first became unavailable in *Cohen* and *Bell,* the courts did not cite the Statutory Construction Act. However, the Act provides: "When any period of time is referred to in any statute, such period in all cases, . . . shall be computed as to exclude the first and include the last day of such period." 1 Pa.C.S.A. § 1908. In *Commonwealth v. Wade,* 475 Pa. 399, 380 A.2d 782 (1977), moreover, it was held that § 1908 is to be used in computing the 180-day period under Rule 1100(a)(2). Since we are to use § 1908 in computing the 180-day period, we should do the same in computing periods to be excluded from the 180-day period under Rule 1100(d)(1).

By computing the periods to be excluded by the method used in *Cohen* and *Bell, supra,* that is, not counting August 29, 1977, but counting May 3, 1978, the day appellee was released from the hospital, it will be seen that 247 days are excluded from the period:

| 1977 | August | 2 |
|---|---|---|
| | September | 30 |
| | October | 31 |
| | November | 30 |
| | December | 31 |
| 1978 | January | 31 |
| | February | 28 |
| | March | 31 |
| | April | 30 |
| | May | 3 |
| | | 247 |

When the 247 excluded days are subtracted from the 430 days that elapsed from June 24, 1977, the date the complaint was filed, until August 28, 1978, the date of trial, it is clear that trial occurred on the 183rd day. Because it, mistakenly I suggest, excludes 248 days, the majority concludes that the 180th day was Saturday, August 26, and that therefore, under 1 Pa.C.S.A. § 1908 (when the last day of the period falls on a Saturday or Sunday, such day is to be omitted from the computation), trial could begin on Monday, August 28, without violating Rule 1100. Since only 247 days should be excluded, the 180th day was Friday, August 25, and trial should have begun on that day.

2

By its terms, Rule 1100(c) permits an extension of the 180-day period within which a defendant may be tried "only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." *See, e.g., Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). Thus, the Commonwealth may assert that the defendant is unavailable as a fugitive, *Commonwealth v. Mitchell, supra*, or because he is incarcerated in another jurisdiction and awaiting disposition of the charges against him there, *Commonwealth v. Williams*, 284 Pa.Super. 125, 425 A.2d 451 (1981), or because he is hospitalized, *Commonwealth v. Haynes*, 245 Pa.Super. 17, 369 A.2d 271 (1976), but to prove unavailability, the Commonwealth must always prove by a preponderance of the evidence that it has exercised due diligence in locating the defendant and bringing him to trial within the period set for trial. As this court stated in *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978):

> Rule 1100(d)(1) provides that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney." Mere incarceration in another jurisdiction does not make appellant unavailable. Appellant will be considered unavailable only for the period during which his presence could not be secured despite due diligence by the Commonwealth.

> *Id.*, 260 Pa.Superior at 135, 393 A.2d at 1049 (citations omitted).

When one examines the question of the Commonwealth's diligence, one must conclude that the Commonwealth failed to meet its burden of proving by a preponderance of the evidence that it was unable, despite its due diligence, to bring appellee to trial by May 22. *Commonwealth v. Ehredt, supra, Commonwealth v. Hill*, 290 Pa.Super. 399, 434 A.2d 813 (1981).

The majority relies on one case to support its conclusion that the Commonwealth showed due diligence in trying to bring appellee to trial within the period of the first extension. Citing *Commonwealth v. Haynes,* 245 Pa.Super. 17, 21, 369 A.2d 271, 273 (1976), the majority states that "the 183 day period which extended from November 2, 1977 until May 3, 1978, ... is excludable so long as the Commonwealth was 'satisfied ... that [appellee] was seriously ill and hospitalized.'" At 1240. The exact quotation from our opinion in *Haynes,* and an examination of the record in this case, shows that the two cases are quite different. In *Haynes* we said:

Testimony of the Philadelphia Detective in charge of the case shows that from August 3, 1973, to October 9, 1973, numerous phone calls to the Delaware County authorities satisfied him that appellant was seriously ill and hospitalized.

245 Pa.Super. at 21, 369 A.2d 273.

There were no "numerous phone calls" here. Instead, the Commonwealth did nothing to determine whether appellee would be able to be tried before the end of the ninety-day extension the Commonwealth received at the hearing on February 22, 1978.

At the hearing on the Commonwealth's second petition for an extension, the assistant district attorney offered as exhibits three letters from his office to the county court administrator, requesting that this case be listed for trial. N.T. 8/16/78, 43, 44, 48. The letters were dated May 16, July 12, and July 26, 1978.

The court administrator testified that his office had refused to list the case for trial because the court records showed that a bench warrant for appellee was outstanding. On the basis of these records, the court administrator testified, he believed appellee to be a fugitive. N.T. 8/16/78, 27–28. Despite this belief, however, the court administrator's office never told the district attorney's office that the case would not be listed for trial. The court administrator acknowledged receiving the letters from the district attorney's

office requesting that the case be listed for trial, but instead of acknowledging the letters or otherwise explaining why despite them the case would not be listed, he simply made a note on the letters that a bench warrant was outstanding, and placed them in his file. N.T. 8/16/78, 29, 31. It appears to have been the court administrator's position that both he and the district attorney got a copy of the same records, showing a bench warrant outstanding, and that if the district attorney didn't know that the court administrator considered appellant a fugitive, he should have known. *Id.*

It was not "[u]ntil about a week," N.T. 8/16/78, 30, before the hearing on the Commonwealth's second petition for an extension—in other words, not until almost *three months after* the date set for trial in response to the Commonwealth's first petition, that someone from the district attorney's office telephoned the court administrator and asked why the case hadn't been listed for trial. N.T. 8/16/78, 30. Then, for the first time, the court administrator expressed his belief—mistaken—that the appellee was a fugitive. The representative of the district attorney's office called back "in about one hour," *id.*, said that "we will have him," *id.*, and a trial date was arranged.

The record further discloses, to quote the opinion of the lower court, "at least three instances of inadequate record keeping" on the part of the district attorney's office. At 1240 n. 2. As has been mentioned, the district attorney's office had a bench warrant issued on September 12, 1977, when appellee failed to appear for arraignment. Yet the warrant was never executed until June 20, 1978, or a *month after* May 22, 1978, the date set for trial in response to the Commonwealth's first petition. N.T. 8/16/78, 36, 70. Also, although the district attorney knew that appellee was hospitalized, it evidently made no request of the hospital to be advised when appellee would be discharged. *Cf. Commonwealth v. Haynes, supra.* When the lower court asked the assistant district attorney to whom his office had looked to keep track of appellee ("Montgomery County Police

Department, or Sheriff's Office, or what?"), the assistant district attorney replied: "It would have been Upper Merion, I believe, was the township where there were charges— they were watching closer to him than we were. They had first claims on him, if you will." N.T. 8/16/78, 13. Finally, the assistant district attorney learned in mid-May 1978 from reading a local newspaper that appellee had been in the Montgomery County court the previous day, N.T. 8/16/78, 14, 20–23, and yet it was not until mid-August, in the telephone conversation mentioned above, that the district attorney's office notified the court administrator that appellee was not a fugitive but available for trial, N.T. 8/16/78, 30.

It is settled that the Commonwealth's bare assertion of due diligence without more will not support a finding of due diligence. *See, e.g., Commonwealth v. Antonuccio,* 257 Pa.Super. 535, 390 A.2d 1366 (1978) (*per curiam*); *Commonwealth v. Porter,* 251 Pa.Super. 346, 380 A.2d 812 (1977). As our Supreme Court has stated: "When a case has Rule 1100 problems, prosecutors must do everything within their power to see that the case is tried on time." *Commonwealth v. Smith,* 477 Pa. 424, 428, 383 A.2d 1280, 1282 (1978). Moreover, this court has held that the Commonwealth must show that it has exercised due diligence in executing a bench warrant. *Commonwealth v. Snyder,* 280 Pa.Super. 127, 133–34, 421 A.2d 438, 441 (1980) ("mere issuance of a bench warrant does not establish due diligence"); *Commonwealth v. Boerner,* 281 Pa.Super. 505, 510–11, 422 A.2d 583, 585 (1980) (Commonwealth entitled to unavailability exclusion if it establishes that police acted with due diligence in executing an arrest warrant).

Here for nine months the Commonwealth made no effort to execute the bench warrant. Even though the Commonwealth knew that the period of the first extension was running, it made no effort to keep track of appellee, only accidentally learning of his whereabouts just before the period ended, by reading a newspaper account of appellee's appearance in the Montgomery County court. And finally,

there was a complete failure on the part of the district attorney's office and court administrator's office to communicate with each other. As the lower court observed, "The assistant district attorney may not be allowed to pass the blame for delay on to the Court Administrator. Both the prosecutor and the Court Administrator are responsible for the management of the court calendar." At 199 n. 2. *See Commonwealth v. Metzger*, 249 Pa.Super. 107, 115, 375 A.2d 781, 785 (1977). When the two offices finally did communicate with each other in August, three months after the period of the first extension had expired, the case was at once listed for, and brought to, trial. No matter how read, such a record cannot support a finding that the Commonwealth met its burden of showing due diligence in bringing appellee to trial.

The order of the lower court should be affirmed.