372 A.2d 444

**COMMONWEALTH of Pennsylvania**

v.

**Dominic MANCUSO and Joseph Mancuso, Jr., Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1976.

Decided March 31, 1977.

See also, 247 Pa.Super. 274, 372 A.2d 459, 247 Pa.Super. 260, 372 A.2d 451, 247 Pa.Super. 266, 372 A.2d 454, 247 Pa.Super. 273, 372 A.2d 458 and 247 Pa.Super. 276, 372 A.2d 459.

R. W. Ziegler, Jr., Pittsburgh, with him Richard S. Ombres, Pittsburgh, for appellants.

Conrad B. Capuzzi, District Attorney, Uniontown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

The instant appeal raises two important questions: (1) whether the lower court erred in granting the Common-

wealth's petition to extend the period in which to try appellants; see Rule 1100(c), Pa.R.Crim.P., 19 P.S. Appendix; and (2) whether the court erred in denying appellants' motion for a change of venue.[1]

In 1975, the Fayette County district attorney submitted to the grand jury over 300 charges of burglary, robbery, arson and conspiracy, involving eleven defendants, several of whom had been members of the Connellsville Police Department when the crimes were committed. The appellants are two of the eleven people arrested at that time. Their trial on charges arising out of an October 22, 1973 burglary of the Connellsville Sons of Italy Hall commenced on December 8, 1975. On December 17, a jury returned a verdict of guilty on charges of burglary and conspiracy. The lower court thereafter denied appellants' post-trial motions and sentenced appellants to concurrent five to ten year terms of imprisonment and to make restitution. This appeal followed.

## I

The facts relating to appellants' Rule 1100 claim are as follows: On April 29, 1975, the prosecutor filed a complaint

---

1. Appellants raise two additional contentions: First, they contend that the lower court erred in its charge to the jury. The record indicates, however, that at the end of the court's charge, appellants' attorney requested only that "a charge be made—that another charge be made—on the type of evidence that Marvin Wedge presented, as to its being a corrupt source. . . ." The court agreed to do so and made a passing reference to the jury "to recall all of the charge of the court as it relates to the law including the specific references we made to the testimony of accomplices." Apparently, this additional reference satisfied counsel at that time because he took no exceptions whatsoever to the charge. The issue is thereby waived. *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973); Rule 1119(b), Pa.R.Crim.P. Appellants also contend that the sentences imposed were excessive. The sentences were within the statutory limit and were imposed after the court considered a presentence report. In light of all the circumstances, we find no abuse of discretion. See *Commonwealth v. Kaminski*, 244 Pa.Super.Ct. 388, 368 A.2d 776 (filed December 15, 1976) (dissenting opinion by Spaeth, J., in which Hoffman, J., joined); see also *Commonwealth v. Person*, 450 Pa. 1, 297 A.2d 460 (1972); *Commonwealth v. Green*, 396 Pa. 137, 151 A.2d 241 (1959).

charging appellant Dominic Mancuso with burglary. On May 14, an additional complaint was filed in which he was charged with conspiracy to commit burglary. This complaint named appellant Joseph Mancuso as one of Dominic Mancuso's co-conspirators; the complaint against appellant Joseph Mancuso was not filed until June 26, 1975. These complaints were not filed in time for consideration by the April Grand Jury. The next grand jury did not convene until August, at which time the appellants were indicted as charged in the complaints. The Commonwealth had until October 26, 1975, 180 days from the date of the complaint, to bring appellant Dominic Mancuso to trial on the original charge, unless the period was extended under Rule 1100(c) or (d), Rule 1100(a)(2).[2] The one-hundred and eightieth day from the complaint against Joseph Mancuso was December 23.

On August 19, all of those accused in the "Connellsville Police cases" filed an application for a change of venue. See Rule 313, Pa.R.Crim.P. That motion was denied after a hearing was held on August 29. All of the cases were scheduled for trial during the September Term which consisted of the weeks beginning on September 2, September 8, September 29, and October 6, 1975. Prior to commencement of the term, appellants petitioned for a one week continuance. On September 8, the court granted the prosecutor a

---

**2.** Rule 1100(c) provides: "At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

Rule 1100(d) provides: "In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

"(1) the unavailability of the defendant or his attorney;

"(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

one week continuance for all of the Connellsville Police cases when the prosecutor learned that the Commonwealth's lead witness, Marvin Wedge, was in the hospital. During the final two weeks of the September Term, the first of the cases was brought to trial. That case, known as the "Foodland" case, did not involve the appellants; however, appellants' attorney represented one of the defendants on trial in that case.

At some point prior to the expiration of the 180 day period, it became apparent to the prosecutor that his office and the courts would not be able to try the remaining Connellsville Police cases within that period. Therefore, on October 14, prior to the end of the period, the prosecutor petitioned the court for an extension pursuant to Rule 1100(c). On October 27, the lower court conducted a hearing on the petition, but did not grant the petition until November 25, when the court granted an extension until the December Term, the next available trial date.[3] On October 28, appellants' counsel withdrew from the case. On November 21, present counsel entered his appearance and, prior to trial, filed a new motion for a change of venue.[4] On

3. In *Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1975), we disapproved the practice of some courts of delaying consideration of a timely Rule 1100(c) petition until after the period has run. The risk is obvious: if the court denied the extension after the period has run, the Commonwealth is prevented from bringing the accused to trial. If the petition is denied promptly, the Commonwealth may nonetheless be able to try the accused within the period. Because we conclude that the extension was properly granted and because the court's inaction engendered no additional delay, see discussion infra, we do not need to address the issue further.

4. In its brief, the Commonwealth argues that the period of time during which appellants were not represented should be excluded under Rule 1100(d)(1) which provides for an exclusion of time *resulting* from counsel's unavailability. The Commonwealth misconstrues the rule. The rule does not permit us to search for days when counsel or appellant were unavailable unless delay in the proceedings results from the unavailability. See *Commonwealth v. Coleman*, 241 Pa.Super. 450, 361 A.2d 870 (1976); *Commonwealth v. Wade*, 240 Pa.Super. 454, 360 A.2d 752 (1976); *Commonwealth v. Adams*, 237 Pa.Super. 452, 352 A.2d 97 (1975). The Commonwealth must be able to point to actual frustration of litigation before we can conclude that unavailability of counsel or a defendant caused the

December 1, counsel requested additional time to prepare that motion. The court held a hearing on December 5, and denied the motion. Trial commenced on December 8.

▮ Appellants contend that the lower court erred in granting the Commonwealth's petition to extend. In their brief, filed before our Supreme Court's recent decisions in *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976), and *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976), appellants argue that the lower court erred in granting the extension because the Commonwealth's request was premised on court backlog. See *Commonwealth v. Mayfield,* 239 Pa.Super. 279, 362 A.2d 994 (1976); *Commonwealth v. Shelton,* 239 Pa.Super. 195, 361 A.2d 873 (1976). Subsequently, appellants filed a supplementary brief in which they discussed the impact of the Supreme Court's decisions in *Mayfield* and *Shelton.* More specifically, they contend that the Commonwealth failed to prove that it exercised due diligence in bringing them to trial.[5]

In *Mayfield,* the Supreme Court rejected the view of a majority of this Court that delays caused by court administration could never justify an extension under Rule 1100(c).[6]

delay. In fact, Fayette County scheduled no criminal proceedings during the period in question. Thus, appellants' failure to retain counsel could not have caused delay in the proceedings. Cf. *Commonwealth v. Millhouse,* 470 Pa. 512, 368 A.2d 1273 (filed January 28, 1977).

5. Appellant, Joseph Mancuso was indicted on June 26, 1975, and tried on December 8, 1975. That is less than 180 days. He contends, however, that because he was named as a co-conspirator in the complaint charging Dominic Mancuso, we should compute the period from the earlier date. Because of our disposition of Dominic Mancuso's claim, we need not reach that issue. We do note, however, that the rule is explicit that the period commences with the filing of the criminal complaint. Rule 1100(a) and (b).

6. See *Commonwealth v. Mayfield,* 239 Pa.Super. at 2, 362 A.2d at 995–96: "The Commonwealth further contends that it exercised the requisite due diligence in bringing the appellant to trial and that the Commonwealth should not be held responsible for any period of delay occasioned solely by the judiciary. In *Commonwealth v. Shelton,* [supra], we refuted this contention . . . ." *Shelton* noted that ". . . if pretrial periods of judicial delay were allowed to

At the same time, the Court made clear that the judiciary as well as the prosecutor must exercise due diligence:

"This Court is aware that, despite diligent efforts by the trial courts, cases may arise when a trial of a defendant cannot be held within the prescribed period. In such circumstances, the policies which prompted the adoption of rule 1100 would not be served by disallowing a reasonable, limited extension specifying 'the date or period within which trial shall be commenced.' Pa.R.Crim.P. 1100(c). The rule recognized that 'due diligence' is the most that should be demanded from the prosecutor and that if despite such efforts, he cannot prepare for trial within the prescribed period, an extension is permissible. No more rigid result under our present rule is justified when the inability of a trial court to proceed within the prescribed period is at issue . . . .

"[W]e recognize the need to insure that trial courts exercise due diligence in implementing the objectives of rule 1100. We do not expect and will not permit the rule to be circumvented by unwarranted grants of extensions." *Commonwealth v. Mayfield*, 469 Pa. at 221, 364 A.2d at 1349. The requirement of due diligence protects the defendant's and the public's "overriding interest" in providing prompt disposition of criminal charges. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 1.1 (Approved Draft, 1972). Thus, *Mayfield* reaffirmed the policy underlying Rule 1100, as originally formulated in *Commonwealth v. Hamilton*, 449 Pa. 297, 308, 297 A.2d 127, 133 (1972): "[A] mandatory time requirement will act as a stimulant to those entrusted with the responsibility of managing court calendars." The Court announced the following, prospective, standards to provide guidance for our courts:

"Henceforth, the trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the 'due dili-

justify an extension of the prescribed time period, then Rule 1100 would provide little stimulus to '[t]hose entrusted with the responsibility of managing court calendars,' thereby frustrating one of its stated purposes, that is, the elimination of the backlog in criminal cases in the courts of Pennsylvania." Supra 239 Pa.Super. at 205, 361 A.2d at 878.

gence' of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided." 469 Pa. at 469, 364 A.2d at 1349–50.

In the instant case, the Commonwealth filed its petition to extend pursuant to Rule 1100(c) on October 14, 168 days after the initial complaint was filed. Therefore, the petition was timely. Cf. *Commonwealth v. Shelton*, supra; *Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976); *Commonwealth v. Woods*, 461 Pa. 255, 336 A.2d 273 (1975); *Commonwealth v. Cutillo*, 235 Pa.Super. 131, 339 A.2d 123 (1975). Further, while we cannot expect the record to include a "certification that trial [was] scheduled for the earliest date consistent with the court's business . . . ", the court apparently complied with that requirement. When it became obvious that the court would not reach the case during the September Term, it relisted the case for the December Term, the next scheduled term of court. Once that term began, trial commenced as soon as the court had disposed of all pretrial matters. See Comment to Rule 1100. In addition, the court's opinion recites the causes of delay: the extraordinary number of indictments filed against the eleven Connellsville Police case defendants; the multiple representation of those defendants by appellants' trial counsel; the continuance requested by the Commonwealth necessitated by hospitalization of its key witness; a one week continuance requested by counsel which effectively prevented trial during the September Term. While the rule is clear that a continuance for less than 30 days does not extend the period under Rule 1100(d), *Commonwealth v. Shields*, 247 Pa.Super. 74, 371 A.2d 1333 (filed March 31, 1977), defense-requested continuances may realistically obstruct diligent efforts by the Commonwealth to try an accused and may,

therefore, justify an extension under Rule 1100(c).[7] The lower court's finding of due diligence is amply supported by the record; therefore, the court properly extended the trial period.

## II

Appellants contend that the lower court erred in denying their motion for a change of venue.[8]

Appellants originally petitioned the court for a change of venue on August 19, 1975. The motion was denied after an August 27 hearing. A second motion was filed on October

7. We must emphasize that the instant case involves section (c) of the rule, not section (d). The parties have posed arguments more appropriately raised when an automatic exclusion is in issue. See footnote 4, supra. For example, appellants argue in their brief as follows: "By examining the record, it will be noted that no continuance was ever granted to Dominic Mancuso. Trial counsel previously retained by Dominic Mancuso was engaged in another trial from September 30th to October 10th, 1975. However, the record will show that Dominic Mancuso was available for trial during this period . . . . In addition, prior trial counsel at that time had a law associate who could have tried a case involving Dominic Mancuso while prior trial counsel was engaged in another court room . . . ." Those considerations are relevant under Rule 1100(d); inquiry under Rule 1100(c) focuses on action or inaction by the Commonwealth. Compare, *Commonwealth v. Mayfield*, supra, with *Commonwealth v. Shelton*, supra.

8. Appellants also argue that the court conducted an improper hearing. The gravamen of the claim is that counsel did not have sufficient time to prepare for the hearing. Initially counsel entered an appearance on November 21. Appellants' previous attorney had already filed an unsuccessful motion on the same issue. At the December 1 hearing, new counsel requested a December 5 hearing date on the motion. At that time, appellants presented their evidence and indicated that they wanted additional time for preparation of further evidence on the subject. The court was hesitant to continue the hearing without agreement by counsel that any additional delay would be excluded for purposes of Rule 1100. Apparently, the court believed that counsel was attempting to manipulate the court system in his request for further preparation. We find no abuse of discretion by the court. The December 5 hearing was scheduled in compliance with appellants' request; appellants presented ample testimony at that time; counsel requested that the court order a continuance, but refused to make the request himself. The court's conclusion that the hearing was adequate and further delay was solely strategic is supported by the record.

22, but the court did not act on that petition. After the appellants' counsel withdrew and appellants retained new counsel, they filed another motion on November 20. On December 1, the court commenced a hearing, but continued it until December 5, because counsel was not prepared at that time. At the December 5 hearing, the appellants presented the testimony of witnesses chosen at random from the community. Further, they offered the testimony of a Mr. John Mihalic, engaged by appellants to gauge public awareness of the impending Connellsville Police cases. He testified as follows:

"Q. What was the general reaction to this type of a survey?

"A. Well, the majority of the people we talked to felt that they were probably guilty, but some of them didn't really want to come out and say this because they felt that it is really up to the Courts to decide and not really them.

"Q. When you say 'they' you are talking about the fifty people you interviewed?

"A. Yes.

"Q. How many of these fifty people would give you their name and address?

"A. Five.

"Q. You gave me the names of four; is there some reason why you didn't give me the name of the fifth person?

"A. The fifth person did give me his name and address but felt that he really had nothing or any idea what was happening with this case and he felt that there was no reason for me to even ask him the questions but he was at least kind enough to at least let us give him an interview.

"Q. I asked you to get an opinion from everyone who gave you his name and address, is that correct?

"A. I felt—according to what my boss, Mr. Hassinger, told me, that I should give subpoenas to the people that had the most knowledge about the case or at least seemed to have the most knowledge of the case.

"[Appellant's attorney]: At this time, your Honors, Judge Adams specifically, I would apologize because I indicated that anybody that gave their name and address should be subpoenaed. Apparently, we are only losing one witness because of this. At any rate, I do apologize because I indicated earlier that everyone should be subpoenaed. Now, you say that you talked to approximately fifty people and your reaction was that most of them felt they were guilty, is that correct?

"A. Correct.

"Q. But some of them indicated that even though they felt they were guilty, it was up to the Court to decide?

"A. Correct.

"Q. You did not go into any discussion that the Court in fact were the people who were on the jury, is that correct?

"A. No.

"Q. You just asked them to say whatever they wanted to say and handed them a subpoena?

"A. Correct."

On cross-examination, he stated that he was unfamiliar with Fayette County and limited his inquiry to Connellsville and Uniontown. Appellants also called representatives of the area news media in which the Connellsville Police cases were reported. The media representatives testified that the cases had received more extensive coverage than many other criminal cases originating in the area. Although counsel intended to call additional witness not available at the time of the hearing, he decided not to request a continuance of the trial date so that further testimony might be taken. Appellants also offered into evidence numerous articles that appeared in local papers and that dealt with the Connellsville Police cases. Those articles have been made a part of the record for our review.

Voir dire commenced on December 8, and continued through December 12. The court granted twenty peremptory challenges as requested by appellants. Further, the court permitted individual examination of each venireman out of

the hearing of the rest of the panel. The court initially examined each venireman and then permitted the district attorney and defense counsel to ask additional questions. The parties exhausted an entire jury panel and part of a second panel before they completed jury selection. During the lengthy proceeding, the lower court, as noted in its opinion, liberally granted challenges for cause. The court also ordered the jury sequestered during the entire trial.

Appellants' request for a change of venue was made pursuant to Rule 313(a), Pa.R.Crim.P., which provides:

"All applications for a change of venue shall be made to the court of the county in which the complaint was filed. Such application may be made on behalf of the defendant or the Commonwealth, or venue may be changed by the court, of its own motion, when it is determined after hearing that a fair and impartial trial cannot be had in the county in which the complaint was filed." The court must consider several factors to determine whether the defendant can receive a fair and impartial trial: First, the court must inquire into the extent of pretrial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975); *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971). Publicity may be so extensive and inflammatory that it permeates the community in which the trial is scheduled and makes a fair trial unlikely: ". . . 'the burden of showing essential unfairness . . . as demonstrable reality,' *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), need not be undertaken when television has exposed the community 'repeatedly and in depth to the spectacle of [the accused] personally confessing in detail to the crimes with which he was later to be charged.' *Rideau v. State of Louisiana* [supra 373 U.S. 723, at 726, 83 S.Ct. 1417, 1419] . . . . .

" '[A]t times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.' [citing *Estes v. Texas*,

381 U.S. 532, 542–43, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)]."
*Sheppard v. Maxwell,* supra at 351–52, 86 S.Ct. at 1516–1517.
See also, *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209
(1973). Second, the court must determine how long prior to
trial reports were made in the mass media. *Commonwealth
v. Nahodil,* supra; *Commonwealth v. Lopinson,* 427 Pa. 284,
234 A.2d 552 (1967); *Commonwealth v. Mervin,* 230 Pa.Su-
per. 552, 326 A.2d 602 (1974). Obviously, the need to trans-
fer the case to another jurisdiction diminishes over time if
publicity similarly diminishes. Third, the court must assess
the quality of the reporting. The change of venue become
more compelling as the media coverage becomes more in-
flammatory and as the "editorial artillery" takes aim at the
accused. *Sheppard v. Maxwell,* supra; *Commonwealth v.
Johnson,* 440 Pa. 342, 269 A.2d 752 (1970). In a close case, a
trial court can further protect the defendant's due process
right to a fair and impartial trial during voir dire. *Beck v.
Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962).
For example, Rule 1106(e)(1)(A), Pa.R.Crim.P., requires the
court to conduct voir dire of prospective jurors individually
and permits voir dire to be taken out of the presence of
other panel members. See *Commonwealth v. Johnson,* su-
pra. The court can permit extensive examination of venire-
men to determine the extent of their familiarity with the
case and the intensity of their opinion concerning the de-
fendant's guilt or innocence.[9]  *Commonwealth v. Nahodil,*
supra; *Commonwealth v. Lopinson,* supra.

**9.** The mere fact that a venireman has heard of a case does not
necessarily disqualify a person as a juror. The District of Columbia
Court of Appeals recently noted that "After determining the venire-
man's degree of interest in and exposure to the case, the court
inquired whether he had formed or expressed an opinion of the guilt
or innocence of any defendant. In addition, the judge determined
whether the venireman knew of Ehrlichman's trial and conviction in
the 'plumbers' case, whether he knew of the pardon of former
President Nixon, whether he thought it unfair to prosecute appellants
in light of the pardon, whether the pardon caused the venireman to
believe appellants were guilty or innocent, and whether the fact that
Nixon had been named an unindicted co-conspirator affected the
venireman's view of appellants. If the venireman had formed an
opinion, the judge attempted to determine whether that opinion was
firmly held or could be set aside. In closing he was asked whether

The lower court in the instant case made a proper inquiry into the extent and quality of pretrial publicity. The court found that the publicity was not so continuous, unfair or inflammatory to require a change of venue. The evidence of public opinion was extremely limited; the reporting was not distorted or inflammatory. Further, the court permitted exhaustive voir dire and excused a large number of veniremen for cause. Cf. *Commonwealth v. Yount*, 455 Pa. 303,

he could return a fair and impartial verdict based solely on the evidence presented at trial and the court's instructions on the law. After the basic questioning was completed, the venireman was excused while the court considered counsel's objections and suggestions for additional inquiries. This step often resulted in recall of the venireman for more questioning.

.    .    .    .    .

"We agree with the District Court that the questions requested by appellants would have been unreasonable in the circumstances of this case. Appellants were not seeking to discover whether some particular piece of highly prejudicial, inadmissible information had made an impression on the members of the venire. Cf. American Bar Ass'n Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.4(b) (approved draft 1968) (hereinafter ABA Standards). Rather, they simply wished to learn how much the veniremen recalled from their exposure to the publicity, regardless of whether that exposure caused them to form opinions of guilt. Under *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, however, mere familiarity with 'the facts and issues involved' in the case would not have rendered a venireman unqualified to sit. The District Court therefore properly concluded that the information appellants sought, although undoubtedly of interest to them, did not warrant the extraordinarily prolonged voir dire that would have been necessary to obtain it.

.    .    .    .    .

"As the Supreme Court stated in *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683, 19 CrL 3193 (June 30, 1976). '[P]retrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial.'  .    .    . After diligently studying the voluminous transcript of the voir dire in this case, we are convinced that the District Court exercised its discretion judiciously and intelligently. Indeed, no one who reads this transcript can fail to be impressed with the patience, attention, and acumen with which the judge probed the opinions of the veniremen so as to remove those who harbored any prejudice or preconception.  .    .    .
"As is our duty, we have reviewed the record to ascertain for ourselves whether appellants were tried by an unbiased jury capable of basing its verdict solely on the evidence introduced at trial. .    . On the basis of our own review, we have no doubt that the jury was impartial." *United States v. Haldeman*, 559 F.2d 31, (D.C.Cir. 1976).

314 A.2d 242 (1974). The lower court did not abuse its discretion in denying appellants' motion. See *Commonwealth v. Johnson*, supra.

Because the lower court properly granted the Commonwealth an extension in which to bring appellants to trial and because the court properly denied their request for a change of venue we affirm the judgments of sentence.

SPAETH, J., concurs in the result.