386 A.2d 147

**COMMONWEALTH of Pennsylvania**

v.

**Ted Steven EHREDT, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1976.

Decided April 28, 1978.

Ralph T. Forr, Jr., Altoona, with him Donald E. Speice, Assistant Public Defender, Hollidaysburg, for appellant.

Thomas G. Peoples, Jr., Assistant District Attorney, Hollidaysburg, submitted a brief for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided, the judgment of sentence is affirmed.

JACOBS, President Judge, files an opinion in support of affirmance in which CERCONE and VAN der VOORT, JJ., join.

SPAETH, J., files a dissenting opinion and HOFFMAN, J., joins in Part I of SPAETH's, J., opinion.

PRICE, J., dissents and would discharge because appellant was not timely tried under Pa.R.Crim.P. 1100.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

JACOBS, President Judge:

On July 9, 1975, appellant Ted Steven Ehredt was convicted by a jury of receiving stolen property.[1] Motions for a new trial and in arrest of judgment were denied by the

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3925.

court below, and a sentence of six to twenty-two months imprisonment was imposed. Appellant questions the propriety of his conviction on this direct appeal, raising several allegations of error.[2] I would affirm the judgment of sentence.

Initially, appellant contends that the lower court erred in granting the Commonwealth's petition for extension of time under Pa.R.Crim.P. 1100(c). The facts relating to this claim are as follows: A criminal complaint was filed against appellant on January 9, 1975. Under the mandate of Pa.R. Crim.P. 1100(a)(2),[3] the Commonwealth was required to bring appellant to trial within 180 days. Trial was scheduled to commence on July 1, 1975, but was rescheduled on that date for July 9, without objection on anybody's part, because the courtroom to which it was assigned was being used. On July 7, 1975, one day before the 180 day period for commencement of trial was to expire, the Commonwealth petitioned for an extension of time. On July 8, 1975, appellant filed a petition to dismiss the charge with prejudice pursuant to Pa.R.Crim.P. 1100(f).[4] Argument on both petitions was held on July 9, 1975, after which the lower court granted the Commonwealth's petition to extend and denied appellant's petition to dismiss. Trial commenced on that date.

Pa.R.Crim.P. 1100(c) provides, in pertinent part, as follows:

At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the

2. The salient facts of the case will be noted as they become relevant to disposition of the issues presented for review.

3. Section (a)(2) of Rule 1100 provides that "[t]rial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

4. Section (f) of Rule 1100 provides, in pertinent part, that "[a]t any time before trial, the defendant or his attorney, may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. . . ."

time for commencement of trial. . . . Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

Here, the Commonwealth's petition seeking a time extension was filed "prior to the expiration of the period for commencement of trial." Our inquiry does not end there, however; the timeliness of a petition to extend is not the sole measure of its validity. The question we still must decide is whether the Commonwealth showed that trial could not "be commenced within the prescribed period despite due diligence." I conclude that it did and, therefore, that the petition to extend was properly granted.

As noted above, the case would have gone to trial on July 1, 1975, but for the unavailability of the courtroom to which it was assigned. Trial was rescheduled for July 9, one day beyond the mandatory 180 day period. At the hearing held on its petition to extend, the Commonwealth did not contend that courtrooms were unavailable during the eight-day delay.[5] *See Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976); *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976). Rather, the Commonwealth predicated its request for a one-day extension solely upon a claim that "[s]everal Commonwealth witnesses indicated that although they were available on July 1, 1975, they would not be available on July 2 or 3 and that in fact the earliest day when the Commonwealth's witnesses would all again be available would be July 9, 1975." N. T. Extension Hearing at 2.

Although appellant argues to the contrary, this is not a situation where it simply was *inconvenient* for the Commonwealth to have the case tried within the required time. The Commonwealth sought an extension because its witnesses would not be available until July 9. This court has recog-

5. We actually are speaking of four *court* dates. July 4–6 was a holiday weekend.

nized that the unavailability of a Commonwealth witness may be a proper basis upon which to grant an extension of time. *Commonwealth v. Brown,* 252 Pa.Super. 365, 381 A.2d 961. *Cf. Commonwealth v. Jenkins,* 248 Pa.Super. 300, 375 A.2d 107 (1977); *Commonwealth v. Mancuso,* 247 Pa.Super. 245, 372 A.2d 444 (1977). I perceive no reason to hold otherwise in the instant case and, therefore, find no merit to appellant's contention that the lower court improperly granted the Commonwealth's petition to extend.

Appellant also contends that his timely application to suppress evidence seized during a search of his apartment should have been granted below. He claims that the search warrant involved here was issued without probable cause and that insufficient facts were presented to justify a nighttime search. The court below ruled otherwise, and I conclude correctly so.

The warrant named "Ted Ehredt" as the occupant and specified "second floor apartment rear of 213 4th Street" as the premises to be searched. The affidavit of probable cause read as follows:

"Jeffrey Wilbur, 15, 427 7th Ave., admitted to stealing said property and then later storing it in the second floor property of 213 4th Str., Altoona, Penna.

"REASON FOR SEARCHING AT NIGHTTIME:

WILBUR WAS ARRESTED IN THE ABOVE APARTMENT AND AFTER THE ARREST APD RECEIVED INFORMATION THAT THE ABOVE MENTIONED PROPERTY WAS GOING TO BE MOVED."

At the outset, we recognize that an affidavit of probable cause may be based on hearsay information and need not reflect the direct personal observations of the affiant. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976). The affidavit, however, still must contain "sufficient information to justify the conclusion that a crime has been committed and that evidence or fruits of the crime may be found at the place to be searched." *Commonwealth v. Heyward,* 248 Pa.Super. 465, 466, 375 A.2d

191, 192 (1977). In *Aguilar*, the United States Supreme Court laid down the now familiar "two-pronged" test for issuing a search warrant when probable cause is based upon information supplied the affiant by an informant. This test requires that the affidavit set forth sufficient underlying circumstances to conclude that the objects to be seized will be where the informant claims and some of the circumstances justifying the affiant's belief in the reliability of the informant.

In the instant case, there has been no contention that the actual burglar's statement as to where he stored the stolen items does not satisfy the *Aguilar* requirements. Rather, appellant argues only that the information set forth in the affidavit was "stale" and, therefore, could not supply the probable cause necessary for the issuance of the warrant. I disagree.

A prime element in the concept of probable cause is the time of the occurrence of the facts relied upon. Thus, it is settled law that "stale" information will not support a finding of present probable cause. As this Court stated in *Commonwealth v. Hagen*, 240 Pa.Super. 444, 449, 368 A.2d 318, 321 (1976).

"Our decisional law has long adhered to the principle that probable cause for issuance of a search warrant must be established at the time that the warrant is issued, *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973), and that such decision must be based on facts which are closely related in time to the date of the warrant, *Commonwealth v. Suppa*, 223 Pa.Super. 513, 302 A.2d 357 (1973). Evidence of criminal activity at some prior time will not support a finding of probable cause on the date that the warrant issues unless it is also shown that criminal activity continued up to or about that time. *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Simmons*, supra; *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971); *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773 (1975)."

■ Here, the burglaries are alleged to have occurred on October 10, November 7 and 10, and December 24, and 27, 1974. The burglar was arrested on January 9, 1975, at about 10:00 P.M., and he admitted that he had stored the stolen items in appellant's apartment; the police applied for a search warrant for that apartment almost immediately thereafter.[6] The search was made within 3 hours of the arrest.

The guidelines for reviewing cases such as this were provided in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), where the Supreme Court stated:

". . . when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 109, 85 S.Ct. at 746. (citation omitted).

Although the burglar did not specify the date that he stored the goods in appellant's apartment, there simply is nothing here to indicate that those goods were not still on the premises at the time the warrant was issued. And, in examining this affidavit for staleness, the concluding allegation that the "property was going to be moved" is not, in our opinion, without probative value to indicate the informant thought the goods were there at 10 P.M. Based on the foregoing, I conclude that sufficient probable cause was supplied for the issuance of the search warrant.

6. Instantly, appellant does not argue that the informant's statement itself was stale; this case does not present a situation where the police receive information regarding the existence of criminal activity, hold it, and only later seek to use that information to establish probable cause. Rather, we are concerned here with a question of the staleness of the information provided in the informant's statement to the police at the time of his arrest.

Lastly, appellant questions the propriety of the nighttime search. This Court has only recently discussed the applicable standards:

Pa.R.Crim.P. 2003(c) provides that "[n]o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." . . The Rule is clear that probable cause is required for the issuance of a search warrant authorizing a daytime or nighttime search. However, due to the greater intrusion upon individual privacy occasioned by a nighttime search, some greater justification than that required for a daytime search must be shown. *See* Pa.R.Crim.P. 2003, comment (c). Put simply, the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning. *Commonwealth v. Baldwin & Neidig,* 253 Pa.Super. 1, 5, 384 A.2d 945, 947 (1978).

Here, as in *Baldwin,* I turn to the California cases for guidance in disposing of appellant's argument.

In *Galena v. Municipal Court,* 237 Cal.App.2d 581, 47 Cal.Rptr. 88 (1965), the affidavit disclosed the existence of stolen goods on the premises and set forth the fact that two persons having some connection with a portion of the contraband had just been arrested. The court found a sufficient showing of good cause for a nighttime search and, in language equally applicable to the instant case, stated:

It is common knowledge that those in possession of contraband or stolen goods make every effort to effectuate its immediate disposition when they learn that persons connected with it have been apprehended by the authorities. 47 Cal.Rptr. at 95.

Similarly, in *People v. Mardian,* 47 Cal.App.3d 16, 121 Cal.Rptr. 269 (1975), the court found good cause for a nighttime search from the facts stated in the affidavit that a controlled substance was stored on the premises and in the process of being moved elsewhere.

 I agree with appellant that a free people should not be subjected to unreasonable and arbitrary intrusions into their homes. Nevertheless, I am satisfied that sufficient facts were presented here to justify the authorization of a nighttime search.

Judgment affirmed.

CERCONE and VAN der VOORT, JJ., join in this opinion.

SPAETH, Judge, dissenting:

The majority first concludes that the trial was timely, and next, that the nighttime search was proper. I disagree with both conclusions.

## 1

On January 9, 1975, a criminal complaint was filed against appellant charging him with the crime of receiving stolen property.[1] Thus appellant should have been brought to trial by July 8.[2] Appellant's case was scheduled for trial on July 1 but was not reached because the court room to which it had been assigned was being used. The case was rescheduled for July 9. On July 7, 179 days after the complaint was filed, the Commonwealth filed a petition under Rule 1100(c) for an extension of time. On July 8 appellant filed a petition under Rule 1100(f) to dismiss the charge with prejudice. Both petitions were argued on July 9. The court granted the Commonwealth's petition and denied appellant's.

Rule 1100(c) provides:

At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such applica-

---

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3925.

2. The rule operated in this case to require trial within 180 days of the filing of the complaint, Rule 1100(a)(2), unless that period was properly extended in response to a petition filed by the Commonwealth under Rule 1100(c).

tion shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

The Commonwealth has the burden of showing that it has met these requirements. *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976); *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976).

Here the Commonwealth has not carried its burden. The July 9 "hearing" consisted only of argument by counsel. The district attorney stated that "[s]everal Commonwealth witnesses indicated that although they were available on July 1, 1975, they would not be available on July 2 or 3 and that in fact the earliest day when the Commonwealth's witnesses would all again be available would be July 9, 1975." N.T. Extension Hearing at 2. By accepting this statement as sufficient, the majority stands Rule 1100 on its head: the Rule guarantees a *speedy* trial for *defendants,* not a *convenient* trial for *witnesses.* Certainly the availability of witnesses is a relevant factor in a decision whether an extension should be granted. Cf. *Commonwealth v. Jenkins,* 248 Pa.Super. 300, 375 A.2d 107 (1977); *Commonwealth v. Mancuso,* 247 Pa.Super. 245, 372 A.2d 444 (1977). However, a bald statement that for unspecified reasons an unspecified number of witnesses will not be "available" for four court dates (July 2, 3, 7, and 8; July 4–6 was a holiday weekend) is not sufficient to show due diligence on the part of the Commonwealth.[3]

The order extending the period for commencement of appellant's trial was therefore improvidently granted, and appellant should be discharged.

**3.** It should also be noted that the Commonwealth did not contend that July 9 was the earliest available trial date after July 1—a contention that, if proved, might amount to a showing of due diligence. Defense counsel said that courtrooms had been available during the eight-day delay.

For the sake of discussion only, and without deciding the point, I am willing to accept the majority's premise that in requiring "reasonable cause for [a] nighttime search", Pa.R. Crim.P. 2003(c) really means something less than "reasonable cause," which the majority, borrowing from the California Penal Code, characterizes as "good cause," or as "some reason why the search cannot wait until morning." Even so, the California cases cited by the majority show that here there was no showing of "good cause," or of any reason why the search should not wait. Specifically: The affidavit does not say *when* Wilbur was arrested; it does not say *how much after* the arrest the information was received that the property was going to be moved; and finally, it does not say *from whom* this information was received. None of the California cases cited by the majority upheld a nighttime search on so meagre an affidavit. If the majority is right that such an affidavit shows "good cause," all the police need to say before being able to conduct a nighttime search is that the goods were stolen. It is especially disturbing that the majority should so hold here, when the most recent of the burglaries occurred thirteen days before the search. For all the issuing authority knew, the stolen goods might have been disposed of some rather considerable time ago. Thus there was no reason at all, much less a good reason, why the search should not wait until morning.

While I have no doubt that the nighttime search was improper, I nevertheless agree that the motion to suppress should have been denied, for I do not think this court has the power to order evidence suppressed, if the evidence was seized pursuant to a search warrant issued on probable cause. The reasons for this conclusion are stated in *Commonwealth v. Jones,* 245 Pa.Super. 487, 369 A.2d 733 (1977). There the lower court had ordered the evidence suppressed because the police officer who served and executed the search warrant failed to verify the inventory of items seized. Reversing, a majority of this court held that although the officer's failure was in violation of the Rules of Criminal

Procedure, it was not such a failure as enabled either the lower court or this court to order the evidence suppressed. An order to suppress may be entered in the defendant's constitutional rights have been violated. However, the failure to verify the inventory was not such a violation. Neither is the failure to show cause for a nighttime search—as distinguished from showing cause for the search itself. An order to suppress may also be entered if permitted by a rule of court. However, there was no rule permitting suppression as a sanction for the failure to verify the inventory. Neither is there a rule permitting suppression for the failure to show cause for a nighttime search; as in *Jones,* we must leave it to the Supreme Court whether to promulgate such a rule.

Accordingly, while I agree that the evidence should not have been suppressed, I should nevertheless order appellant discharged because he was not tried in time.

HOFFMAN, J., joins in Part 1 of this opinion.