396 A.2d 443

**COMMONWEALTH of Pennsylvania**

v.

**Melchor George BAYANI, Appellant.**

Superior Court of Pennsylvania.

Submitted June 19, 1978.

Decided Dec. 22, 1978.

370

Judgment of sentence reversed and vacated and defendant discharged.

George B. Ditter, Assistant Public Defender, Norristown, for appellant.

William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in granting the Commonwealth's petition for an extension of time under Pa.R.Crim.P. 1100(c) and in denying his motion to dismiss the charges against him under Pa.R.Crim.P. 1100(f). Because we agree, we reverse the judgment of sentence and discharge appellant.

On February 4, 1977, Lower Merion Township police arrested appellant and filed a written complaint charging him with burglary,[1] theft,[2] receiving stolen property,[3] and criminal conspiracy.[4] Trial did not commence until August 5, 1977, 182 days after the filing of the written complaint. On August 2, 1977, the 179th day, the Commonwealth filed a petition for an extension of time under Pa.R.Crim.P. 1100(c),[5] in which it claimed that, despite its due diligence, unavoidable judicial delay prevented it from commencing appellant's trial within 180 days of the written complaint. On August 5, 1977, the 182nd day, the lower court held a hearing on the Commonwealth's Rule 1100(c) petition, and appellant filed a motion to dismiss the charges against him under Rule 1100(f). The hearing of August 5, 1977 revealed the following facts.

Concerning the unavailability of courtrooms and judicial delay, the testimony of several witnesses revealed that the lower court did not schedule any trials during the period from June 27 to August 3, 1977, the 180th day: the last week of June 1977 was an "open week" during which no trials were scheduled, the court recessed during the entire

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 3502.

2. The Crimes Code, *supra*; 18 Pa.C.S.A. § 3921.

3. The Crimes Code, *supra*; 18 Pa.C.S.A. § 3925.

4. The Crimes Code, *supra*; 18 Pa.C.S.A. § 903.

5. We have previously noted our displeasure at the practice of last minute petitions for extensions of time in *Commonwealth v. Ray*, 240 Pa.Super. 33, 36, 360 A.2d 925, 927 (1976), especially, when, as in the case at bar, the lower court does not dispose of the Commonwealth's petition until after the expiration of the prescribed period.

month of July, 1977, and the court was "for all practical purposes" closed on August 1, 2 and 3, 1977, while judges attended the Pennsylvania Conference of State Trial Judges. During four of the six preceding weeks between May 16, 1977, when appellant's case was first listed for trial, and June 27, 1977, when the court stopped scheduling trials, four judges sat in the criminal division of the lower court; during the other two weeks of that period, two and three judges were so sitting, respectively. From the bench, PRESIDENT JUDGE RICHARD S. LOWE, the lower court judge presiding at this hearing, indicated that he had scheduled the lower court's July recess upon the assurances of the prosecutor's office that no Rule 1100 problems would arise during that time. The prosecutor's records revealed that there were 1292 criminal cases pending as of May 1, 1977; it presented no evidence of the number of cases pending as of June 1, 1977. The Commonwealth also presented no evidence concerning the number of those cases having Rule 1100 problems or the number of prosecutors available to handle them.

The assignment clerk from the office of the Court Administrator of the Montgomery County Court of Common Pleas testified that she is responsible for listing criminal cases for trial. She first receives a list of cases ready for trial from the prosecutor's office. She then lists them for trial on a board in chronological order, by their initial trial list date, and in columns under the names of the prosecutors assigned to try them. She first listed appellant's case for trial on May 16, 1977. Throughout May and June 1977, the prosecutor initially assigned to try appellant's case had a number of very long trials listed in his column ahead of appellant's. The prosecutors office did not assign appellant's case to another assistant district attorney until some time around August 1, 1977, when the prosecutor originally assigned to the case resigned. Appellant's case did not reach "standby", or imminently triable, status until July 29, 1977, the 174th day. August 4, 1977, the 181st day, was the first available day for trial thereafter due to the court's schedule. The

new prosecutor who was assigned to try appellant's case had just transferred from another section of the prosecutor's office and had no backlog of cases; as a result, appellant's case "zoomed to the top" of the trial list in his column. The assignment clerk testified that if appellant's case had been reassigned to another prosecutor earlier, it "might well" have reached the top of the list by May or June, 1977.

On August 5, 1977, after hearing the above, the lower court granted the Commonwealth's petition for an extension of time under Rule 1100(c) and proceeded immediately to trial by jury. During the trial, the lower court dismissed the charges of criminal conspiracy and receiving stolen property. On August 8, 1977, the jury found appellant guilty of burglary and theft of movable property. On August 20, 1977, after denying appellant's post-verdict motions, the lower court sentenced appellant to three to eight years imprisonment for the burglary and theft convictions. This appeal followed.

 Rule 1100 mandates that the Commonwealth commence appellant's trial within 180 days of the filing of the written complaint.[6] Any delay beyond 180 days must be either excluded from the computation of days pursuant to Rule 1100(d)[7] or justified by an order granting an extension pursuant to Rule 1100(c). *Commonwealth v. O'Shea*, 465 Pa. 491, 495, 350 A.2d 872, 874 (1976). Rule 1100(c) provides:

**6.** Rule 1100(a)(2) provides:
"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

**7.** The Commonwealth does not claim that any days were excludable under Rule 1100(d), and our review of the record has not revealed any. At the hearing on the Commonwealth's Rule 100(c) petition, an assistant District Attorney testified that, for an unspecified part of the week of May 16, 1977, he participated in another trial with the public defender assigned to defend appellant. This testimony was insufficient to establish either that appellant's attorney was in fact unavailable on May 16, 1977, the first day that appellant's case was listed for trial, or that any such unavailability caused a delay. *Commonwealth v. Lamonna*, 473 Pa. 248, 373 A.2d 1355 (1977); *Commonwealth v. Mancuso*, 247 Pa.Super. 245, 372 A.2d 444 (1977).

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced." The rule "attempts to eliminate delay due to lack of due diligence on the part of prosecutorial officers." *Commonwealth v. Shelton*, 469 Pa. 8, 16, 364 A.2d 694, 698 (1976). An extension of time under Rule 1100(c) "many be justifiably granted because of a causal relationship between the 'judicial delay' and the Commonwealth's inability to commence trial despite due diligence . . . [e. g.] [s]ituations where the Commonwealth is prepared to commence trial prior to the expiration of the mandatory period but the court because of scheduling difficulties or the like is unavailable." *Id.*, 469 Pa. at 18, 364 A.2d at 699. *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976); *Commonwealth v. Royer*, 256 Pa.Super. 361, 389 A.2d 1165 (1978); *Commonwealth v. Ehredt*, 255 Pa.Super. 84, 386 A.2d 147 (1978); *Commonwealth v. Hughes*, 251 Pa.Super. 66, 380 A.2d 379 (1977); *Commonwealth v. Kidd*, 251 Pa.Super. 140, 380 A.2d 416 (1977); *Commonwealth v. Love*, 251 Pa.Super. 17, 379 A.2d 309 (1977). In *Commonwealth v. Smith*, 477 Pa. 424, 383 A.2d 1280 (1978), our Supreme Court found that, for some two and one-half months prior to the Rule 1100 deadline, the Montgomery County District Attorney's office was aware of both the lower court's schedule and the nature and estimated length of the criminal case. Given that knowledge, when the case was called for trial within the Rule 1100 time period, "the Commonwealth did not show due diligence by simply explaining that the prosecutor assigned to the case was involved in another trial. The Commonwealth, having knowledge of all facts previous-

ly stated, should have had a prosecutor prepared to try the case when it was called . . . .

"We realize, of course, that the situation may well arise where the Commonwealth may be unable to try a case because the available prosecutors are outnumbered by cases having Rule 1100 problems. Here, however, no such explanation was given. It could very well be that on [the day the case was called for trial], the prosecutor originally assigned to appellant's case was involved in a trial which also had Rule 1100 implications. We must remember, however, that the Commonwealth has the burden of establishing due diligence and on this record, the Commonwealth has not met its burden." *Id.*, 477 Pa. at 428, 383 A.2d at 1282.

*Commonwealth v. Smith, supra,* controls the instant case. The assignment clerk in the Montgomery County court administrator's office first listed appellant's case for trial on May 16, 1977, two and one half months before the 180th day and six full weeks before the court stopped hearing trials. Because the assignment clerk did not list it until the District Attorney's office informed her that it was prepared to try the case, we can safely infer that, as of May 16, 1977, the District Attorney's office knew the nature of the case and could estimate the length of its trial. We can also safely infer from the description of the period between June 27 and August 3, 1977, during which the court heard no cases, that the District Attorney's office was fully aware in advance that no judge or courtroom would then be available; especially noteworthy is the comment by PRESIDENT JUDGE LOWE that he received assurances from the District Attorney's office that no problems under Rule 1100 would arise because of the court's July recess. Despite knowledge of the above, appellant's case was first assigned to an assistant District Attorney whose backlog prevented the case from being tried until after time expired under Rule 1100, and was not reassigned or given priority until it was too late to commence trial within 180 days. The subsequent assistant District Attorney brought the case to trial within one week of its being assigned to him. Better monitoring of cases

would clearly have resulted in the commencement of appellant's trial within the 180 day time period.

Moreover, we note that the Commonwealth presented no evidence, that, during the six week period from May 16 to June 27, 1977, all of its prosecutors were engaged in other cases having Rule 1100 problems. The assignment clerk listed cases chronologically by the date the District Attorney's office informed her it was prepared to try them. Because the length of time between filing a written complaint and completion of the prosecutor's trial preparation will vary from case to case, we cannot infer that the 180 day time limit for all the cases listed ahead of appellant's would have run before appellant's Rule 1100 date, August 3, 1977. Under all these circumstances, we conclude that the Commonwealth has failed to establish its due diligence in the face of unavoidable judicial delay. Accordingly we reverse and vacate the judgment of sentence and discharge appellant.

Judgment of sentence reversed and vacated and appellant discharged.

VAN der VOORT, J., dissents.

SPAETH, J., files a Concurring Opinion.

HESTER, J., files a Dissenting Statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I am unwilling to rely on the prosecutor's conduct during the period June 27 to August 3 as manifesting a lack of due diligence. I do, however, agree that the Commonwealth offered no reason why the case could not have been tried sometime between May 16 and June 27. I therefore concur in the majority's order vacating sentence and ordering appellant discharged.

HESTER, Judge, dissenting:

I dissent.

I would affirm the rulings, the judgment and the sentence of the court below. The majority would discharge the appellant due to the fact that his trial started 182 days following the filing of the complaint.

Appellant was apprehended while in the process of burglarizing a residence. There was no question of his guilt. The police walked in on him while he was in the process of packing the valuables for removal from the residence.

On the 179th day following his arrest, the Commonwealth presented a petition for an extension of time. The trial court granted the extension following a full and complete hearing, holding in part:

I believe that the mandate of the Supreme Court of Pennsylvania has been satisfied that this case, after having been listed or certified for trial on the 16th of May, proceeded to the top of the list, in an orderly progression; that no cases were placed before it; that we were functioning throughout the latter part of May and through much of June with a limited number of trial judges available for criminal matters; that this case was not prejudiced in any way; that in point of fact, the earliest possible date it was assigned to a courtroom and that it missed the 180 day limit by two days. From August 3rd to August 5th, 1977. I likewise find that though it's entirely speculative it's quite possible that there was some delay in this matter by reason of the fact that Mr. Walsh had a long list of cases and the matter had to abide by his availability, and the same is true with regard to Mr. Cole, the public defender originally assigned to this case who likewise had a long list, and it may have been deferred because of his unavailability.

In all events it seems to me that the district attorney and the court administrator have done all that could possibly be done under the circumstances, that the case was put into the first room. The district attorney files his Petition for Extension of Time for commencing trial in a timely

378

fashion, and it's granted and it's determined that the trial shall be held no later than today, and we will pick the jury in fifteen minutes.

Trial started 182 days following appellant's arrest. Appellant offered no defense; he did not take the stand, and was convicted of the charges as recited in the majority's opinion. There was no question of his guilt. He received an appropriate sentence, and now the majority would discharge him. I would affirm the judgment of the court below.