## Commonwealth v. Brown

*William Chadwick, Assistant District Attorney,* for Commonwealth.
*Jay Penneys,* for defendant.

CAESAR, *J.,* February 20, 1980—On November 14, 1978, following a non-jury trial, defendant was found guilty of terroristic threats, simple assault, robbery, and possessing an instrument of crime. After post-trial motions were denied, defendant was sentenced to a prison term of four to eight years, two concurrent prison terms of two and one half to five years and a concurrent prison term of one to two years. Defendant now appeals to the Superior Court.

The convictions resulted from defendant's activities of January 16, 1978, when he demanded money, at gunpoint, from Geraldine Douglas. He opened Mrs. Douglas' car door and, with a toy gun or tear-gas gun in his hand, threatened her with harm unless she gave him money. He terrorized her, stating, "You mean to tell me your life isn't worth $10?"

The principal issue on appeal is whether the Commonwealth exercised due diligence in bringing defendant to trial.

The 180-day period for commencing trial under Rule 1100 ran on July 17, 1978. The Commonwealth filed a petition to extend the period for commencing trial on July 12, 1978 and, on July 27,

Judge Blake extended the "run date" under Rule 1100 to August 18. On September 7, in response to a petition filed August 18, 1978, Judge Blake again extended the run date, to September 20, on which date the motion to suppress was heard before Judge White. On September 21, said motion was sustained in part and denied in part and Judge White recused himself.

Defendant contends that the extensions of July 27 and September 7, 1978 were improperly granted.

In promulgating Rule 1100, the Supreme Court apparently sought to substitute a prophylactic rule for the case-by-case balancing test which was crushing the courts in resolving speedy trial motions. While setting forth a 180-day mandatory period for commencement of trial, Rule 1100 permits the Commonwealth to obtain an extension, "if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." Pa.R.Crim.P. 1100(c).

In determining "due diligence," the court may, in the proper case, take into consideration the entire history of efforts to try the case and the issue need not turn on a few isolated events at the end of the 180-day period. "Periods of delay occasioned by defense request may substantiate the grant of a Commonwealth extension petition." Com. v. Brown, 252 Pa. Superior Ct. 365, 381 A. 2d 961, 963 (1977).

In Com. v. Mancuso, 247 Pa. Superior Ct. 245, 372 A. 2d 444 (1977), the court similarly stated that "defense-requested continuances may realistically obstruct diligent efforts by the Commonwealth to try an accused and may, therefore, justify an extension under Rule 1100(c)." 372 A. 2d at 448.

In Com. v. Lewis, 247 Pa. Superior Ct. 46, 371

A. 2d 1318, allocatur refused (1977), the preliminary hearing was postponed indefinitely on a defense motion, in order to allow defendant an opportunity to submit to a polygraph examination in the hope that results favorable to him would persuade the prosecuting authorities to drop the charges. The Commonwealth agreed to this delay, which ultimately resulted in defendant's not being tried within the Rule 1100 period. The Superior Court determined that the extension under Rule 1100(c) was properly granted and found due diligence, stating:

"Due diligence does not require the Commonwealth to resist a reasonable request for delay . . . The prosecuting authorities acted diligently while making every possible effort to accommodate appellant's strategy. This is all that Rule 1100 requires of them . . . Limited extensions, properly granted where the delay is occasioned by defense activities, more than adequately protect the purpose behind Rule 1100." 371 A. 2d at 1321, 1322.

Part of the delay in Com. v. Gibson, 248 Pa. Superior Ct. 348, 375 A. 2d 132, allocatur refused (1977), was caused by defendant. The Superior Court concluded that the Commonwealth was "clearly entitled" to receive additional time for trial. Under the facts of Gibson, an extension in excess of the defense delay was not error.

The court, in Com. v. Garnette, _____ Pa. Superior Ct. _____, 392 A. 2d 711 (1978), also recognized that:

"The entire period of delay resulting from a continuance requested by the defense is a factor to be considered in determining whether the Commonwealth has exercised due diligence and is, as a result, entitled to an extension." 392 A. 2d at 713.

In holding that the Commonwealth was diligent in Com. v. Lane, 245 Pa. Superior Ct. 146, 369 A. 2d 335 (1976), the court took into consideration the fact that the Commonwealth was ready, on numerous occasions, to proceed with trial, but was faced with requests for continuances by defendant or co-defendants.

Where the delay is, to a large extent, caused by defense counsel, the defense bears its share of responsibility for the delay. See Com. v. Cooley, 484 Pa. 14, 398 A. 2d 637 (1979). In his opinion in support of affirmance by an equally divided Supreme Court, in Com. v. Brightwell, 486 Pa. 401, 406 A. 2d 503, 505-506 (1979), Justice Nix wrote:

"[W]e know of no case wherein the right to a speedy trial has been violated when the cause for delay has been properly attributable to the defendant. To the contrary, where the defendant has deliberately caused the delay, he has been prevented from taking advantage of his own wrong . . . While Rule 1100 is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct."

The instant case provides an example of why such an approach is reasonable and just.

The history of this case presents a scenario which is, unfortunately, not rare in Philadelphia. To understand it, it is necessary for this court to describe the system currently in use for trial of cases:

In disposing of its thousands of new cases each year, Philadelphia has adopted a multi-faceted approach. All non-homicide felony cases are called by a Calendar Judge. Felonies are separated accord-

ing to whether or not a defendant has indicated a willingness to waive a jury trial. Waiver cases are usually assigned to a "list room" where many cases (as many as 15) are assigned for trial on a single day. Usually, the same Judge presides in the list room for six-month periods. The Defender Association assigns a single defender to that room for a week; the district attorney assigns one, and sometimes two, assistant district attorneys to that room on a continuing basis. If it appears that defendant is willing to waive a jury trial but that the case may be protracted, the Calendar Judge assigns it to the "jury program."

The use of "list rooms" makes it possible to try felony cases with reasonable dispatch, making full use of limited resources—courtrooms, trial judges, assistant district attorneys and defenders. A list room judge usually disposes of a number of felony cases on a single day by a combination of trials (usually with motions to suppress), guilty pleas or other dispositions. On the other hand, cases assigned to the "jury program" usually take from one to two days for a non-jury trial to five or more days for a jury trial.

One result of this system is that cases assigned to a list room are frequently marked "not reached," because too many other matters are ready for disposition on that day, or for other reasons, such as difficulty in securing the presence of witnesses on that day. If too few cases are listed, the court may have unused time; if too many are listed, some cases will not be reached. On rare occasions, another judge will be able to take a case which cannot be reached in the list room on a particular day, but all courtroom schedules are usually full to overflowing.

Several practices and policies have developed in

response to this situation. For one thing, the district attorney's office usually puts some, or all, of its civilian witnesses "on call"—that is, the witness promises to appear in court on short notice. This is especially so where a case was continued previously. Secondly, the defender's office has adopted a "zone defense," assigning a defender to a "list room" for one week.

The relevance of this recitation lies in the fact that the substantial number of factors involved in processing the many cases in the list rooms frequently result in cases not being tried on the day they are listed, despite good faith on the part of all involved. Yet, were it not for the "list room" method of disposing of a large number of felony cases, the Philadelphia Courts would almost certainly be unable to heed the mandates of Rule 1100.

The quarter sessions file in this case indicates that the matter was listed for trial on April 18 and May 5, 1978, in a "list room," and that thereafter it was listed for disposition of motions to suppress on June 7, July 6, August 16 and September 20, 1978. On September 21, 1978 the motions were disposed of, the motions judge recused himself and the case was returned for reassignment to a judge in the "jury program." The case was ultimately assigned for trial on November 14, 1978 and, on defendant's waiver of a jury trial, was tried before Judge Caesar on that date.

At a hearing on defendant's post-trial motions, this court took testimony from a Commonwealth witness that on April 18, 1978, when the matter was listed before Judge Harris in Courtroom 615, defendant had not been "brought down" from State Correctional Institution, Graterford and that Judge Harris denied the assistant district attorney's request for a "forthwith bringdown," continuing the

case to May 5, 1978 in Courtroom 636, where Judge McCrudden was sitting.

The docket indicates the following entries for May 5, 1978:

"Commonwealth requests trial by jury in this matter, sent to Room 625 for assignment. Deft. in custody in Graterford.

"Case ready, not reached. Deft. at Graterford, writ prepared.

"Case returned from Room 625 for Motion only. Commonwealth requests jury trial."

The Commonwealth presented testimony in explanation of these cryptic entries. One of the two district attorneys assigned to Room 636 testified that at that time the Voluntary Defender's Office was engaged in a systematic pattern of avoiding Judge McCrudden for non-jury trials and, in support of that charge, testified that of 11 cases listed before Judge McCrudden on that day, only one disposition was made.

Further testimony revealed that the district attorney's office had countered by demanding a jury trial whenever they felt that the defenders were "ducking" Judge McCrudden. The situation became so serious that a policy level meeting was eventually arranged between the court administrator and the chief defender.

The witness then testified that on May 5, 1978, based upon his perception of the defender's tactics in the Walter Brown case, a jury trial was demanded, but that the Calendar Judge, Judge Marshall, had returned the case to Judge McCrudden for disposition of the motion to suppress.

When the case was not reached on May 5, 1978, it was continued by Judge McCrudden to June 7th. The docket notes, on June 7, 1978: "defense coun-

sel needs time for further investigation." This is the first indication that the defense was not ready to try the case. It came at a time dangerously close to the Rule 1100 run date and served to further delay the disposition of the motions to suppress, which was to be preliminary to a jury trial.

On June 7, 1978, Judge McCrudden continued the case to July 6 in Courtroom 636. The assistant district attorney assigned to the room (the same assistant involved on June 7th) testified that on that date 14 cases were listed and six were disposed of. Of these, the defender was counsel in at least three. At 5:10 p.m., the case on trial (older than the Walter Brown, Jr. case) was carried over to the next day.

The assistant district attorney further testified to the Defender Association's firm policy of requiring that the defender who prepared the case pursue it. If the Walter Brown, Jr. case had been moved out of Courtroom 636 on July 6, 1978, that courtroom would have been stripped of its defender. The docket entry for July 6, 1978 shows: "Not Reached," and the case was continued to August 16, 1978, in the same Courtroom.

On July 12, 1978, the Commonwealth filed a petition to extend Rule 1100 and, on July 27, 1978, Judge Blake extended the run date to August 18, 1978.

On August 16, 1978, Judge Forer was sitting in Courtroom 636. The docket entries indicate that the case was not reached and was continued to September 20, 1978. The assistant district attorney assigned to Courtroom 636 on that day (who was not previously involved with the Walter Brown, Jr. case) testified that nine cases were listed for that day, seven were disposed of and two were marked "Not Reached," including the Walter Brown case.

He testified that court was convened at 9:30 a.m. and adjourned at 4:30 p.m. He further testified that he could not remember making any special effort to have this case tried over others on that day and that the records he had with him did not indicate whether the cases tried on that day were not as old as the Walter Brown, Jr. case. He did state that the voluntary defender assigned to the courtroom that day was involved in at least three of the dispositions made that day.

On September 7, 1978, acting on the Commonwealth's petition to extend filed August 18, Judge Blake extended the time for trial to September 20, 1978.

On September 20 and September 21, before Judge White, one of the motions to suppress was granted, the remaining motions were denied and Judge White recused himself.

Ultimately the case was assigned to the undersigned for non-jury trial and was tried on November 14, 1978.

• • •

As previously stated, this court takes the position that, in determining whether the Commonwealth has exercised due diligence in bringing a case to trial, the court may look to the entire record and need not be limited to the action, or lack of action, of the district attorney's office.

Testimony offered to the post-trial motions judge raises a substantial issue of "judge avoidance"—a form of "judge shopping"—on the part of defense counsel. This court does not resolve the issue, but believes it to be a relevant factor in balancing the equities and determining whether, on the record developed thus far, the Commonwealth exercised due diligence in bringing the case to trial. In addition, the various continuances before Judge Mc-

Crudden came at a critical period in the trial listing process.

This court cannot, and does not, make a specific finding of fault or complicity on the part of the defense, but does recognize that, given the realities of a high volume criminal court system such as that in Philadelphia, it is to the advantage of defense counsel to delay trial on the possibility that some error or inaction on the part of the Commonwealth or the court might result in a failure to adhere to the mandates of Rule 1100. Under the circumstances, this court believes that actions by the defense at earlier trial listings may be given considerable weight on the issue of due diligence.

On the basis of the record, this court did not accept defendant's contention that the extensions of July 27 and September 7, 1978 were granted in error, and therefore defendant's post-trial motions alleging lack of due diligence by the Commonwealth in bringing this case to trial were denied.

• • •

Defendant's other arguments on post-trial motions were also without merit. Besides the victim, two other witnesses positively identified defendant, and there was sufficient evidence to convict. See Com. v. Mangini, 478 Pa. 147, 386 A. 2d 482 (1978).

The court properly determined that the toy pistol or tear-gas gun used by defendant fell within the definition of an instrument of crime under 18 Pa.C.S.A. §907(c), since such instrument is commonly used for criminal purposes and was possessed by defendant under circumstances not manifestly appropriate for the lawful uses it may have. See Com. v. Flythe, no. 1832, October term, 1978 (Pa. Superior Court, filed December 14, 1979); see, generally, Com.v. Johnson, 212 Pa.

Superior Ct. 1, 239 A. 2d 861 (1968); Com. ex rel. Johnson v. Myers, 200 Pa. Superior Ct. 177, 189 A. 2d 331 (1963), 81 A.L.R. 3d 1006.

The conviction of terroristic threats was also proper as, during the criminal incident defendant pointed a gun, demanding money, and threatened, "You mean to tell me your life isn't worth $10?" The victim did, in fact, feel threatened.

Accordingly, all of defendant's post-trial motions were denied.